Joseph Noel LEONARDO, Jr.,
Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 84SC216.

Supreme Court of Colorado,
En Banc.

Dec. 2, 1986.

Rehearing Denied Dec. 22, 1986.

J. Gregory Walta, Colorado Springs, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for respondent.

LOHR, Justice.

The defendant in this criminal case, Joseph Lee Leonardo, III (Leonardo),[1] was charged with and convicted of theft by receiving in violation of section 18–4–410, 8B C.R.S. (1986),[2] and conspiracy to commit theft by receiving in violation of section 18–2–201, 8B C.R.S. (1986). The defendant appealed, contending that the trial court had erred in two respects. First, the court had declined to elaborate on its instructions in response to a question submitted by the jury after commencing deliberations. Second, the court had failed to obtain the presence of the defendant and his counsel and to afford the defendant's counsel an opportunity to be heard before the court decided upon the appropriate reply to the jury's question. The Colorado Court of Appeals affirmed the convictions, holding that although the trial court had erred in not having the defendant and his counsel present and in not affording the defendant's counsel an opportunity to be heard, the error was harmless because the defendant was not prejudiced by the court's response to the jury. *People v. Leonardo*, 687 P.2d 511 (Colo.App.1984). We granted certiorari and now reverse the judgment of the court of appeals and direct that the defendant receive a new trial.

I.

Viewing the facts in the light most supportive of the jury's verdicts, the record discloses the following course of events. Early in June of 1982, Leonardo and a co-worker, his brother-in-law, Michael Robinson, were eating lunch at a fast food restaurant in Colorado Springs when they were approached by an unidentified man who offered to sell them some tools. Both Leonardo and Robinson were carpenters and had been working on a roofing project that day. Leonardo and Robinson decided to see what the man had for sale and accompanied him to his van where the tools were located. Leonardo testified that carpenters who are in need of money commonly sell their tools for less than true value in order to subsist. After inspecting the tools, Leonardo purchased several extension cords, levels and saws, for a total of between $75 and $100. Except for the extension cords, each of these tools had the initials "A.E.W." scratched on it. Al E. Walton, the rightful owner of the tools, had previously reported that his tools had been stolen out of his van sometime over the Memorial Day weekend when the van was parked on a construction site.

Shortly after purchasing the tools, Leonardo pawned them at three different pawn shops. Leonardo was out of work at this time and needed money to pay his bills. Michael Robinson also pawned some of the tools he had purchased. In the course of

1. The information named Joseph Noel Leonardo, Jr., as the defendant. However, the person actually charged and brought to trial was Joseph Lee Leonardo, III. Joseph Noel Leonardo, Jr., is the defendant's father.

2. Section 18–4–410(1), 8B C.R.S. (1986), provides in pertinent part:

[A] person commits theft by receiving when he receives, retains, loans money by pawn or pledge on, or disposes of anything of value of another, knowing or believing that said thing of value has been stolen, and when he intends to deprive the lawful owner permanently of the use or benefit of the thing of value.

investigating the theft of these tools, Officer Cox of the City of Colorado Springs discovered some of the tools in various pawn shops. Officer Cox examined the pawn tickets and observed that one of Leonardo's pawn tickets listed an address identical to that shown on a pawn ticket signed by Robinson. The officer went to that address, the apartment in which Leonardo and Robinson lived, and found Robinson. After questioning him and noticing tools that matched the descriptions of some of the other tools stolen from Walton, the officer arrested Robinson. Later that day, Officer Cox secured a search warrant, returned to the apartment and encountered Leonardo. The officer questioned Leonardo and thereafter arrested him.

Both Leonardo and Robinson were charged in El Paso County District Court with theft by receiving and conspiracy to commit theft by receiving. Robinson entered into a plea agreement and pleaded guilty to a lesser charge. The case against Leonardo proceeded to trial.

At the conclusion of the evidence, the jury was instructed on the elements of theft by receiving. One of the elements listed in the instruction was that the defendant could be convicted only if he acted while "knowing or believing" that the thing of value in question had been stolen. The court also gave the jury a standard instruction on the term "knowingly" but did not define the term "believing" for the jury.

In the course of deliberations, the jury sent a note to the court which read:

Is *Knowing or Believing* in instruction Number 6 The Same as *Having a Suspicion of*?

The court, without consulting counsel for either side or informing Leonardo, responded in writing as follows:

Ladies and Gentlemen:

You must reach your verdict applying the words as you find them in the instructions.

The jury made no further inquiries and returned their verdicts of guilty a short time later.

On the basis of the court's handling of the jury's question, Leonardo moved for a new trial. His motion was denied and he was sentenced to four years probation. He subsequently appealed his convictions to the court of appeals, again based upon the trial court's handling of the jury's question. A divided panel of the court of appeals upheld Leonardo's convictions, *People v. Leonardo*, 687 P.2d 511 (Colo.App.1984), and he petitioned this court for a writ of certiorari. We granted Leonardo's petition and we now reverse the judgment of the court of appeals.

II.

In order to convict a defendant of theft by receiving, the jury must find that he "receive[d], retain[ed], loan[ed] money by pawn or pledge on, or dispose[d] of anything of value of another, *knowing or believing* that said thing of value [had] been stolen...." § 18–4–410, 8B C.R.S. (1986) (emphasis added); *see also People v. Griffie*, 44 Colo.App. 46, 610 P.2d 1079 (1980). The instructions given to the jury included this "knowing or believing" requirement as one of the elements of theft by receiving, using the same words as the statute. Also, the term "knowingly" was defined further for the jury by use of a standard instruction.[3] The term "believing" was not defined further for the jury.

We have held that an instruction employing the language of the statute is sufficient if the language is clear. *E.g., People v. Freeman*, 668 P.2d 1371, 1383–84 (Colo. 1983) (robbery instruction); *People v. Dago*, 179 Colo. 1, 4, 497 P.2d 1261, 1262 (1972) (same). The definition of "knowing-

---

**3.** The jury was instructed that

A person acts 'knowingly' or 'willfully' with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of that nature or that the circumstance exists. A person acts 'knowingly' or 'willfully' with respect to a re-

sult of his conduct, when he is aware that his conduct is practically certain to cause the result.

These definitions are substantially identical to the ones found in § 18–1–501(6), 8B C.R.S. (1986).

ly" that the trial court included in its instructions to the jury is substantially the same as the definition set forth in section 18–1–501(6), 8B C.R.S. (1986), and has frequently been cited with approval for use in jury instructions. *See, e.g., City of Englewood v. Hammes,* 671 P.2d 947, 952–53 (Colo.1983). Also, in a case addressing a challenge to the theft by receiving statute on the basis that "believing" is unconstitutionally vague, we held that the term is "understandable by persons of common intelligence." *People v. Holloway,* 193 Colo. 450, 452–53, 568 P.2d 29, 31 (1977). The majority of the court of appeals therefore determined that the instructions given were adequate and contained no indication "that 'suspicion' would suffice as an element" of theft by receiving. *People v. Leonardo,* 687 P.2d at 512–13. Because the original instructions were adequate, the majority of the court of appeals held that the trial judge had responded properly to the jury's inquiry. In so holding, the court of appeals erred.

■ The issue in this case is not the adequacy of the original instructions given, but rather the jury's demonstrated misunderstanding of those instructions. *"Absent a contrary showing,* it is presumed that the jury understood and heeded the trial court's instructions." *People v. Moody,* 676 P.2d 691, 697 (Colo.1984) (emphasis added); *accord People v. Gutierrez,* 622 P.2d 547, 554 (Colo.1981); *People v. Jacobs,* 179 Colo. 182, 187, 499 P.2d 615, 618 (1972). This presumption, however, is rebuttable. Where, as here, a jury affirmatively indicates that it has a fundamental misunderstanding of an instruction it has been given, the basis for a presumption that the jury understands the instruction disappears.

Both parties in this case urge that *ABA Standards for Criminal Justice,* Standard 15–4.3(a) (2d ed. 1980), should serve as a guide for determining when the trial judge should give additional instructions in response to an inquiry from the jury. We agree. Standard 15–4.3(a) provides:

If the jury, after retiring for deliberation, desires to be informed on any point of law, they shall be conducted to the courtroom. The court shall give appropriate additional instructions in response to the jury's request unless:

(i) the jury may be adequately informed by directing their attention to some portion of the original instructions;

(ii) the request concerns matters not in evidence or questions which do not pertain to the law of the case; or

(iii) the request would call upon the judge to express an opinion upon factual matters that the jury should determine.

■ The People argue, and the majority in the court of appeals apparently agreed, that the trial judge's failure to answer the jury's question was appropriate since the jury could "be adequately informed by directing their attention to ... the original instructions." *See ABA Standards for Criminal Justice,* Standard 15–4.3(a)(i) (2d ed. 1980). However, this was obviously not the case. The question asked by the jury, "[i]s *Knowing or Believing* in instruction Number 6 The Same as *Having a Suspicion of?,"* demonstrates that the jury had considered the relevant instruction on mental state but did not know if suspicion was encompassed within the culpable mental state described in that instruction. Referring the jury back to the same instruction that created the doubt in their minds could serve no useful purpose. A jury should be referred back to instructions only when it is apparent that the jury has overlooked some portion of the instructions or when the instructions clearly answer the jury's inquiry. Here, the jury did not overlook the relevant instruction and the instructions provided no clear answer to the jury's question.

■ Also, the jury's question concerned a matter that cannot be appropriately characterized as one "not in evidence" or "not pertain[ing] to the law of the case." *See ABA Standards for Criminal Justice,* Standard 15–4.3(a)(ii) (2d ed. 1980). The question concerned the culpable mental state required to commit the crime of theft by a receiving—an issue central to the determination of guilt or innocence. Likewise, the jury's question did not call for the judge to offer an opinion upon factual mat-

ters. *See ABA Standards for Criminal Justice*, Standard 15–4.3(a)(iii) (2d ed. 1980). Rather, it called on the judge to answer a question of law to which the answer is certain.

Both knowledge and belief on the part of an actor are to be determined by examining the actor's subjective state of mind. 4 C. Torcia, *Wharton's Criminal Law* § 455, at 8 (14th ed. 1981). It has been said that knowledge is an assurance of a fact or proposition founded on perception by the senses, or intuition, while belief is an assurance based on evidence, and from other persons. *Black's Law Dictionary* 141 (rev. 5th ed. 1979). "Knowing" literally imports a state of mind close to absolute certainty; "believing" requires something less. 2 W. LaFave & A. Scott, Jr., *Substantive Criminal Law* § 8.10, at 427 (1986). Each of these mental states, however, requires a mental conclusion that the fact exists. This is not the case with suspicion.

Suspicion does not rise to the level of belief or knowledge. 2 W. LaFave & A. Scott, Jr., *supra*, at 427–28. It encompasses the apprehension of something without proof or upon little evidence. *Black's Law Dictionary* 1298 (rev. 5th ed.). It includes a slight or even a vague idea that a fact exists. *Black's Law Dictionary* 1297 (rev. 5th ed. 1979). When one suspects that a fact exists, he recognizes a possibility of the existence of that fact but has not reached a mental conclusion that the fact is true. Suspecting that a thing is stolen, then, cannot suffice to convict someone of receiving stolen property "knowing or believing" that it has been stolen.

■ We presume that a jury understands the instructions it is given. However, when the jury indicates to the judge that it does not understand an element of the offense charged or some other matter of law central to the guilt or innocence of the accused, the judge has an obligation to clarify that matter for the jury in a concrete and unambiguous manner. The jury's confusion in this case could have been removed by a simple and direct response. Instead, the trial judge chose not to clarify the matter. Because the jury's confusion related to a central element of the crime of theft by receiving, the court committed prejudicial error when it failed to respond adequately to the jury's inquiry. *See Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946) ("When a jury makes explicit its difficulties a trial court should clear them away with concrete accuracy.").[4]

---

**4.** On at least one prior occasion we have held that a trial judge in a criminal case did not err in merely referring the jury back to the original instructions after the jury had posed a question to the trial judge during deliberations. *Phillips v. People*, 170 Colo. 520, 462 P.2d 594 (1969). That decision, however, is consistent with our holding today.

In *Phillips*, an aggravated robbery case, the jury sent a question to the judge during deliberations which read: "Can the defendant be found guilty of aggravated robbery if the existence of a gun is doubted?" The judge, after consulting with counsel for both sides, replied:

I am sorry that I cannot answer your question directly, but the answer is contained in the instructions that you now have.

Again I must state that no single one of these instructions states all the law applicable to the case, but all of these instructions must be taken, read, and considered together, as they are connected with and related to each other as a whole.

As for the gun, this is one of the material allegations of the crime charged against the defendant.

*Phillips v. People*, 170 Colo. at 531–32, 462 P.2d at 599–600. Although not expressly noted in the opinion, the instructions to the jury undoubtedly contained an instruction to the effect that the jury could only convict the defendant if it found that each element of the offense charged had been proved beyond a reasonable doubt. Therefore, the instructions answered the question asked by the jury. The judge clarified any potential confusion by stating that the presence of the gun was one of the elements of the offense. In *Phillips*, therefore, the answer to the question asked by the jury was indeed contained in the jury instructions. The jurors had only to examine those instructions more intently in order to discover the answers. In the present case, however, the answer to the jury's question was not to be found in the instructions. The jury obviously examined the instructions covering the subject matter of the question but was confused as to how those instructions resolved the issue of "suspicion." The trial judge should have cleared away the confusion of the jury.

## III.

■ Leonardo also contends indirectly that the trial judge committed error when he failed to obtain the presence of Leonardo and his counsel and to permit the defendant's counsel an opportunity to be heard before the court responded to the jury's inquiry. The defendant in a criminal case has a fundamental right under the Colorado constitution to have counsel present when the judge gives instructions to the jury or responds to questions from the jury. Colo. Const. art. II, § 16; *Nieto v. People,* 160 Colo. 179, 183, 415 P.2d 531, 533 (1966) (trial court knew where defense counsel could be found).[5] Implicit within this right is the right of defense counsel to argue to the court concerning possible responses to the jury's inquiries and make objections, if desired, to those responses. It is therefore constitutional error for a trial judge to respond to an inquiry from a jury without first making reasonable efforts to obtain the presence of the defendant's counsel.

■ In cases of constitutional error involving the right to counsel, reversal is required unless "the appellate court can 'declare a belief that it was harmless beyond a reasonable doubt.'" *Germany v. People,* 198 Colo. 337, 340, 599 P.2d 904, 906 (1979) (quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)). *See also Key v. People,* 715 P.2d 319, 323 (Colo.1986). *Cf. Rushen v. Spain,* 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) (per curiam) (applying the "harmless beyond a reasonable doubt" standard to a communication between judge and jury in the absence of the defendant and his counsel). If there is a reasonable possibility that the defendant could have been prejudiced, the error cannot be harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. at 23–24, 87 S.Ct. at 827–828; *Graham v. People,* 705 P.2d 505, 509 & n. 6 (Colo.1985).[6] The question from the jury in

---

**5.** We have not previously decided whether either the United States constitution or the Colorado constitution requires the presence of the defendant when the judge communicates with the jury after deliberations have begun. Also, the United States Supreme Court has not conclusively decided whether this is a critical stage of criminal proceedings so that the presence of the defendant is required. *See Rushen v. Spain,* 464 U.S. 114, 117–18 n. 2, 104 S.Ct. 453, 455, 456 n. 2, 78 L.Ed.2d 267 (1983) (assuming, without deciding, that constitutional right to presence was implicated). However, several state courts have held that the Sixth Amendment to the United States Constitution requires the defendant's presence under these circumstances. *E.g., Aillon v. State,* 168 Conn. 541, 363 A.2d 49, 53 (1975); *Cape v. State,* 272 Ind. 609, 400 N.E.2d 161, 163 (1980); *People v. Ciaccio,* 47 N.Y.2d 431, 418 N.Y.S.2d 371, 373, 391 N.E.2d 1347, 1349 (1979). *Contra State v. Christensen,* 129 Ariz. 32, 628 P.2d 580, 586 (1981) (holding that a defendant has a right to have his attorney present at communications between judge and jury but has no right to be personally present). A few states have interpreted their state constitutions to require the presence of the defendant. *Cape v. State,* 400 N.E.2d at 163; *People v. Ciaccio,* 418 N.Y.S.2d at 373, 391 N.E.2d at 1349; *State v. Lee,* 585 P.2d 58 (Utah 1978). In light of our decision that it was prejudicial error for the court not to try to obtain the presence of defense counsel so that counsel could be present and argue to the trial judge, we need not decide if either the United States constitution or the Colorado constitution requires the presence of the defendant under these circumstances.

**6.** Under the "harmless beyond a reasonable doubt" standard, the "reasonable possibility" of prejudice requires reversal. *Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–828, 17 L.Ed.2d 705 (1967); *Graham v. People,* 705 P.2d 505, 509 & n. 6 (Colo.1985). Therefore, when a constitutional error has occurred, the defendant is not required to make an affirmative showing that he was prejudiced by that error.

On occasion we have required that a defendant show prejudice when the judge has communicated with the jury before obtaining the presence of counsel. *E.g., People v. Thomas,* 181 Colo. 317, 509 P.2d 592 (1973); *People v. Lovato,* 181 Colo. 99, 507 P.2d 860 (1973); *Wiseman v. People,* 179 Colo. 101, 498 P.2d 930 (1972). In all of these cases the communication between the judge and jury involved matters that, at least arguably, were minor and could not have affected the fundamental rights of the respective defendants. However, to the extent that those cases can be read to support the proposition that a defendant must show prejudice in cases involving communications between the judge and jury concerning instructions in the absence of the defendant and his counsel, we expressly disapprove them.

This is not to say that such communications can never be harmless beyond a reasonable doubt. If the judge properly responds to an inquiry from the jury, there is no prejudice to the defendant. Also, if the matter is one that has no

this case betrayed a serious misunderstanding regarding the culpable mental state required for the crime of theft by receiving. Although he had a duty to clear away this misunderstanding, the judge did not do so. We have already held that this conduct was prejudicial to Leonardo. Ante at p. 1256. He might well have been convicted of theft by receiving for no more than "having a suspicion" that the tools he bought were stolen. It is impossible to determine whether the jury applied the correct mental state in reaching its verdict, and in light of the jury's question there is a strong possibility that it did not. Therefore, under the circumstances of this case, we cannot say that the failure of the trial judge to obtain the presence of the defendant and his counsel and to give defense counsel the opportunity to be heard was harmless beyond a reasonable doubt.

The judgment of the court of appeals is reversed and the case is remanded to that court for return to the trial court with directions that the judgment of conviction be vacated and that the defendant be granted a new trial.

VOLLACK, Justice, dissenting:

The majority reverses the court of appeals' ruling that the trial court committed harmless error in failing to obtain the presence of counsel before replying to a jury question during deliberations. I respectfully dissent.

I disagree with the majority's analysis of the issue in this case. The majority writes:

The issue in this case is not the adequacy of the original instructions given, but rather the jury's demonstrated misunderstanding of those instructions.

Majority op. at 1255. I believe the issue is whether there was error contained in the answer which the judge gave to the jury, and whether the court's action prejudiced the rights of the defendant. *Phillips v. People*, 170 Colo. 520, 462 P.2d 594 (1969); *Accord*, ABA Standards for Criminal Justice, Standard 15–4.3(a)(i) (2d ed.

1982). The majority opinion sets forth an unsupported test as to when a jury should be referred back to the original instructions. The majority opinion states:

A jury should be referred back to instructions *only when* it is apparent that the jury has *overlooked* some portion of the instructions *or when* the instructions *clearly answer* the jury's inquiry.

Majority op. at 1255 (emphasis added). I do not believe this to be the applicable test. As I view the issue, the appropriate standard for determining when the jury, after retiring for deliberation, desires to be informed on any point of law is whether or not the court's response correctly states the applicable law, and whether or not it is in any way prejudicial to the defendant. *Phillips*, 170 Colo. at 532, 462 P.2d at 600; *Kath v. Brodie*, 132 Colo. 338, 287 P.2d 957 (1955); *Accord, State v. Benford*, 129 Ariz. 447, 631 P. 2d 1105 (App.1981).

Because the court's response was that the jury reread the instructions, the response clearly did not misstate the law. The original instructions were in conformity with Colorado law. The instructions in question had been reviewed by counsel and approved prior to original submission to the jury.

The majority states that "[r]eferring the jury back to the same instruction that created the doubt in their minds could serve no useful purpose." Majority op. at 1255. I disagree. The ABA Standards for Criminal Justice, Standard 15–4.3(a)(i) (2d ed. 1982), provides:

[T]he jury may be adequately informed by directing their attention to some portion of the original instructions.

The trial court's response to the jury question in applying the ABA Standard did not prejudice the defendant and resolved the question for the jury.

Clearly, the court erred in not informing counsel of the inquiry and in not conducting a hearing on the inquiry out of the presence of the jury. However, the majori-

reasonable possibility of affecting the verdict, the error would be harmless beyond a reason-

able doubt.

ty opinion's conclusion that because the jury made inquiry into the applicable mental state, it could not apply its findings of fact to the appropriate law, when told not to go beyond the original instructions which contained easily definable words of common knowledge, is speculative. The phrase, "having a suspicion of," is not contained in the original instructions. Therefore, it is probable that after the judge informed the jury to reread the instructions which did not contain the words of their inquiry, the jury applied the basic, commonly understood meaning of the words in question. The presumption is that the jury understood and heeded the trial court's instructions. *People v. Moody*, 676 P.2d 691 (Colo.1984).

Here, the jury's inquiry indicated that it was straining to supply content to the words "believing" and "knowing." The court acted properly in informing the jury to refer back to "the words as you find them in the instructions." Both the words, "knowing" and "believing," are basic, commonly understood words, and we have rejected a vagueness challenge to those very words. *People v. Holloway*, 193 Colo. 450, 568 P.2d 29 (1977). It has been held that an instruction using those words, without further definition, suffices. *People v. Griffie*, 44 Colo.App. 46, 610 P.2d 1079 (1980). Prospective jurors are disqualified if they are unable to understand the English language. § 13–71–109(2)(b), 6 C.R.S. (1973 & 1986 Supp.); *see People v. Rodriquez*, 638 P.2d 802 (Colo.App.1981). To argue that the jury misunderstood simple English words in the instructions is, in effect, no more than to untimely attack the jurors' qualifications, *see* section 13–71–109, or to impermissibly attack the mental process by which the verdict was reached. *Santilli v. Pueblo*, 184 Colo. 432, 521 P.2d 170 (1974); *see also* C.R.E. 606(b). Therefore, the defendant has failed to show any prejudice as a result of the court's action.

That the defense and the People were not given a chance to review whether the jury's inquiry was incorrect procedure. However, because the defendant failed to establish that the trial court gave an erroneous statement of the law or that the actions of the trial court prejudiced the defendant's rights, there was no reversible error. *People v. Thomas*, 181 Colo. 317, 509 P.2d 592 (1973); *People v. Martinez*, 42 Colo.App. 307, 600 P.2d 82 (1979).

I would affirm the court of appeals.

I am authorized to state that Justice ROVIRA joins in this dissent.