**The PEOPLE of the State of Colorado, Petitioner,**

v.

**Michael Dwain ALEXIS, Respondent.**

**No. 90SC87.**

Supreme Court of Colorado,
En Banc.

Feb. 19, 1991.

Rehearing Denied March 18, 1991.

Gale A. Norton, Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Robert M. Russel, Asst. Atty. Gen., Denver, for petitioner.

David F. Vela, State Public Defender, Douglas D. Barnes, Deputy State Public Defender, Denver, for respondent.

Justice ERICKSON delivered the Opinion of the Court.

We granted certiorari to review *People v. Alexis,* 794 P.2d 1029 (Colo.App.1990). A jury found Michael Alexis guilty of felony murder, second-degree burglary, aggravated robbery, and theft. On appeal, the conviction was reversed and the case was remanded for a new trial. The court of appeals held that reversible error occurred when the trial judge refused to clarify the meaning of a stipulation after the jury, during the course of deliberations, submitted the following question to the court: "On the stipulation, did the defendant knowingly agree to the stipulation as indicated in instruction # 19?" Reversible error was also found in the failure of the trial court to suppress a stolen stereo receiver unit discovered in the defendant's room. We now reverse and remand to the court of appeals with directions to reinstate the judgment of conviction and sentence entered by the trial court.

## I

On August 31, 1984, Alexis and his cousin, Louis "Joe" Reaves, robbed Dr. Kathryn Simon at gun-point, and burglarized her home. Alexis and Reaves stole a variety of items, including a .32 caliber handgun and a stereo receiver unit, both of which had inscribed serial numbers.

On September 2, 1984, Ronald Von Dollen, a Yellow Cab Company driver, picked up a passenger at Stapleton Airport. Alexis was identified as the passenger. At trial, testimony was presented that on the evening of September 2, 1984, Alexis was driving Von Dollen's Yellow Cab and stopped to pick up a fare. While en route to the passenger's destination, the cab stalled at 13th Avenue and Santa Fe Drive. Alexis walked to a nearby 7–11 and called another cab to get home.

On September 3, 1984, Von Dollen's body was found in a patch of weeds. Von Dollen had been shot in the head four times with a .32 caliber handgun. His cab was discovered at 13th Avenue and Santa Fe Drive. Alexis' fingerprints were found on the cab.

On September 4, 1984, Heidi Tuck was sexually assaulted in her car, and then taken to her home and robbed. Alexis' fingerprints were found on her car. On September 11, 1984, Alexis was arrested while burglarizing a parked car. In a search incident to the arrest, the officers discovered a .32 caliber handgun that Alexis had placed under the seat of the car, and in his pocket they discovered an ammunition clip for a .32 caliber handgun still holding one live round.

The serial number of the handgun seized from Alexis matched that of the gun stolen from Dr. Simon's house. Ballistics tests also established that the pistol was the one used to kill Von Dollen. Based on the serial number, and the ballistics tests, a search warrant was obtained to search the Alexis residence. The subsequent search led to the discovery of Von Dollen's wallet in the bottom of a tool box located in Alexis' room.

In the execution of a second search warrant, based on the Tuck assault and robbery, detectives saw an unusual amount of stereo equipment in Alexis' home and recorded the serial numbers. After determining that one of the stereo receivers belonged to Dr. Simon, the detectives returned to Alexis' home, and obtained consent from Alexis' mother to remove the stereo receiver.

At trial, Alexis took the witness stand and admitted that he had participated in the burglary, robbery, and theft of Dr. Simon, and that he had been driving Von Dollen's cab on the evening Von Dollen was murdered. Alexis, however, denied killing Von Dollen, and denied having possession of the .32 caliber handgun until after Von Dollen was shot and killed. He claimed that he obtained the .32 caliber handgun from Reaves in exchange for a cassette deck several days later.

Alexis testified that on the night of Von Dollen's murder, he was walking home around midnight when he encountered Reaves on a street corner. Reaves told Alexis that he was on his way home, and that he "had a cab" around the corner. Alexis went home, and later decided to find the cab that Reaves had mentioned. He found the cab with the keys still in it, and Von Dollen's empty wallet on the front seat. A call came over the radio for a passenger pickup, and Alexis decided to respond to the call and collect the fare. After he picked up the passengers, the cab stalled at 13th Avenue and Santa Fe Drive.

■ During the course of trial, Reaves, outside the courtroom, told one of the prosecutors, Alvin LaCabe, that he had participated in the burglary and robbery of Dr. Simon, but that he did not take the .32 caliber handgun, and did not murder Von Dollen.[1] The prosecutor informed defense counsel of the statement made by Reaves. Defense counsel entered into a stipulation with the prosecutor for the admission of

---

1. In a hearing in chambers, after Alexis attempted to call Reaves as a defense witness, Reaves invoked his Fifth Amendment right against self incrimination, and the court held that Reaves was unavailable as a witness.

Reaves' statement to establish that Reaves participated in the robbery of Dr. Simon.

The trial court advised the jury that the parties stipulated:

On October 13, 1985, Louis Joe Reaves told Mr. LaCabe that he was involved in the commission of the offense against Dr. Kathryn Simon on August 31, 1984.

Mr. Reaves stated that he took three handguns: a Luger, a .38 revolver, and a .45 caliber. Mr. Reaves stated that the defendant, Michael Alexis, took the other handguns.

Mr. Reaves told the prosecutor that he drove his car along with the defendant, Michael Alexis, to the Simon residence where they committed the offense.

The jury was instructed,

This information is admitted as a stipulation and may be relevant to the charges of burglary, robbery, and theft against Kathryn Simon on August 31, 1984. You shall consider it as evidence on those charges. It shall be given such weight and credence as you, the jury, determines that it deserves.

At the defendant's request, the following instruction was also given to the jury:

Ladies and gentlemen, Counsel wanted me to emphasize that what this stipulation is, is this is a stipulation that this is what Mr. Louis Joe Reaves told Mr. LaCabe, and you should treat it as what Mr. Louis Joe Reaves told Mr. LaCabe.

At conclusion of the trial, the jury was also given instruction No. 19, which stated:

The prosecution and the defendant have stipulated to certain facts in this case, and you were so instructed about these stipulations during the trial. A stipulation renders unnecessary the presentation of any evidence to prove those facts, and the jury must regard those facts as conclusively proved. The effect of a stipulation is to make the stipulated facts true for purposes of the trial.

The issue is whether the court committed reversible error in addressing the question the jury sent to the court in the course of deliberation. The question was: "On the stipulation, did the defendant knowingly agree to the stipulation as indicated in in-struction #19?" After entertaining suggestions by both counsel, the trial court responded: "Both the stipulation and Instruction No. 19 mean what they say and no more. Please refer to them again."

II

Alexis asserts that the question indicated the jury did not understand whether the stipulation was that Reaves made the statements in the stipulation to the prosecutor, or that what Reaves said to the prosecutor was true. Accordingly, Alexis contends that the trial court committed error by not further instructing the jury that he did not stipulate to the truth of the statements made by Reaves to LaCabe. The prosecution claims that the question only addressed whether Alexis, and not defense counsel, agreed to the stipulation.

In *Leonardo v. People*, 728 P.2d 1252, 1255 (Colo.1986), we were guided by Standard 15–4.3(a), ABA Standards for Criminal Justice (2d ed. 1980), in determining when a trial judge should give additional instructions in response to an inquiry from the jury. Standard 15–4.3(a) provides:

If the jury, after retiring for deliberation, desires to be informed on any point of law, they shall be conducted to the courtroom. The court shall give appropriate additional instructions in response to the jury's request unless:

(i) the jury may be adequately informed by directing their attention to some portion of the original instructions;

(ii) the request concerns matters not in evidence or questions which do not pertain to the law of the case; or

(iii) the request would call upon the judge to express an opinion upon factual matters that the jury should determine.

*Id.*

In *Leonardo*, the trial court erred by referring the jury back to the original instruction when the jury misunderstood the applicable legal standard, which was not clearly defined in the other instructions. *Id.* at 1254. In this case, the question from the jury did not relate to the law of the

case, but to the extent and meaning of the evidence set forth in the stipulation.

As required by Standard 15–4.3(a)(i), the court properly referred the jury back to the original instructions and the stipulation to the factual issues in the jury's question. *See United States v. Walther*, 867 F.2d 1334, 1341 (11th Cir.1989); *United States v. White*, 794 F.2d 367, 370 (8th Cir.1986). The stipulation contained such phrases as "Reaves told LaCabe," and "Reaves said." Instruction No. 19 was the appropriate instruction on stipulations at the time this case was tried.[2] In addition, the trial court specifically stated at the time the stipulation was entered into evidence that the parties were stipulating that Reaves made certain statements to LaCabe, and that the stipulation should be treated as what Reaves told LaCabe.

To provide the jury with additional information or instructions would have been contrary to Standard 15–4.3(a)(ii) and (iii). If the trial judge had instructed the jury, as the defendant requested, that the defendant did not in fact agree with the statements made by Reaves, or that Reaves did not necessarily relate the truth to LaCabe, then the trial judge would have gone beyond the stipulation and expressed an opinion both on a matter not in evidence (the truth of the stipulation), and a factual matter that was properly determinable by the jury. The stipulation was prepared and agreed to by the parties, and could not be changed by the judge. In our view, the trial judge properly answered the jury's question by referring it back to the original stipulation and the instructions.

### III

■ During the trial, the defendant sought to suppress Dr. Simon's stereo receiver, which was examined in his room, contending the inspection of the stereo units exceeded the bounds of the search warrant. The prosecution claimed the search was justified by a reasonable suspicion created by the large amount of equipment present in the defendant's room. The trial court found that the police were lawfully on the premises, executing a valid search warrant and that an articulable suspicion that the stereo equipment had been stolen was created by the amount of stereo equipment and facts establishing the defendant's participation in home burglaries. While this case was pending before the court of appeals, the United States Supreme Court announced *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). *Arizona v. Hicks* held that when it is necessary to physically move stereo equipment to obtain the serial numbers, officers must have probable cause that the equipment is stolen. *Id.* The court of appeals applied *Arizona v. Hicks* retroactively, and remanded the case to the trial court to determine whether the stereo equipment had in fact been moved in order to secure the serial numbers.

In our view, the remand is not necessary since any error was harmless. Although the stereo was admitted to prove the charges against the defendant for burglary, robbery, and theft, the admission of the stereo was cumulative to Alexis' testimony and his admission that he stole the stereo and put it in his room. *People v. O'Donnell*, 184 Colo. 104, 108, 518 P.2d 945, 948 (1974).

Accordingly, we reverse and remand to the court of appeals with directions to reinstate the judgment of conviction and sentence entered by the trial court.

LOHR, J., concurs in part and dissents in part, and QUINN and MULLARKEY, JJ., join in the concurrence and dissent.

---

**2.** The Colorado Model Jury Instructions now provide separate guidelines for a stipulation as to testimony and a stipulation as to facts. Model Jury Instruction 4:11 reads,

> Stipulation as to testimony: The parties have agreed that if _(name)_ were called as a witness he would testify as set forth in the stipulation. You should consider that testimony in the same way as if it had been given here in

court and you should judge this testimony in the same manner in which you would judge the testimony of any witness who appeared and testified before you.

Model Jury Instruction 4:12 reads,

> Stipulation as to facts: The parties have agreed as to the existence of a certain fact [certain facts]. You may regard that fact [those facts] as proven.

Justice LOHR concurring in part and dissenting in part:

The majority overturns the holding of the Colorado Court of Appeals that the trial court erred in declining to provide a clarifying instruction in response to a question submitted by the jury during deliberations. I believe that the court of appeals correctly resolved this issue, which affects only the felony murder conviction. Accordingly, I respectfully dissent from that part of the majority opinion holding that the defendant's felony murder conviction should be reinstated.[1]

The evidence established that the weapon used to kill Ronald Von Dollen was a .32 caliber handgun taken from the residence of Dr. Kathryn Simon during a robbery committed by defendant Michael Dwain Alexis and Louis Joe Reaves. The weapon was in Alexis' possession when he was arrested more than a week after the homicide. He testified, however, that he had obtained the weapon from Reaves several days after the killing in exchange for a cassette deck. Reaves claimed his privilege against self-incrimination and did not testify. During the course of the trial Reaves told prosecutor LaCabe that he had participated in the Simon robbery, had taken three described handguns not including a .32 caliber weapon, and that Alexis had taken the other handguns. The prosecutor and defense counsel stipulated that Reaves *told* the prosecutor these things and agreed that the stipulation should be presented to the jury. The jury therefore had conflicting circumstantial evidence before it concerning who possessed the murder weapon at the time Von Dollen was shot.

The court orally instructed the jury that it could consider the stipulation as evidence and give it such weight and credence as the jury should determine that it deserved. The court also orally instructed the jury that the stipulation was that "this is what Mr. Louis Joe Reaves told Mr. LaCabe and

you should treat it as what Mr. Louis Joe Reaves told Mr. LaCabe." *See* maj. op. at 931, setting forth the stipulation and oral instruction in full. After the evidence had been presented, the court read the instructions to the jury, including an instruction on the effect of a stipulation. This instruction was instruction no. 19 and was taken with the jurors to the jury room. The instruction stated:

> The prosecution and the defendant have stipulated to certain facts in this case, and you were so instructed about these stipulations during the trial. A stipulation renders unnecessary the presentation of any evidence to prove those facts, and the jury must regard those facts as conclusively proved. The effect of a stipulation is to make the stipulated facts true for purposes of the trial.

The jury deliberated for almost a day before sending the following question to the court: "On the stipulation, did the defendant knowingly agree to the stipulation as indicated in instruction # 19?". About forty-five minutes later the jury inquired of the bailiff whether the judge had an answer to their question. In the meantime counsel and the court were considering the proper response. Defense counsel argued that the question likely reflected confusion concerning whether instruction no. 19 should be construed to require that the jurors accept as fact only that Reaves *made* certain statements to the prosecutor or whether the jurors must also regard the contents of those statements as conclusively proven. Defense counsel vigorously argued that the court should dispel any such confusion by answering the question to say that the parties stipulated that Reaves *told* the prosecutor the things stated in the stipulation but that the parties did not stipulate to the truth of that information. The court rejected this proposal and advised the jury in writing that "[b]oth the stipulation and Instruction No. 19 mean what they say and no more. Please refer to them again." The jury returned its verdicts of guilty to

---

1. The majority also concludes that any error in admission of the stereo receiver into evidence was harmless, with the result that the defendant's convictions for second degree burglary, aggravated robbery and theft should be reinstated. I agree, and therefore join part III of the majority opinion.

the crimes charged within five to fifteen minutes after receiving this instruction.

The court of appeals held that "the trial court erred by its refusal to clarify the meaning of the stipulation after the jury expressed confusion during its deliberations." *People v. Alexis*, 794 P.2d 1029, 1031 (Colo.App.1990). I agree.

In *Leonardo v. People*, 728 P.2d 1252, 1255 (Colo.1986), we held that ABA *Standards for Criminal Justice* Standard 15–4.3(a) (2d ed. 1980), "should serve as a guide for determining when the trial judge should give additional instructions in response to an inquiry from the jury." *Id.* That standard provides that additional instructions on a point of law shall be given unless:

(i) the jury may be adequately informed by directing their attention to some portion of the original instructions;

(ii) the request concerns matters not in evidence or questions which do not pertain to the law of the case; or

(iii) the request would call upon the judge to express an opinion upon factual matters that the jury should determine.

The majority acknowledges the applicability of standard 15–4.3(a) but concludes that by referring the jury back to instruction no. 19 and the stipulation, the judge properly observed that standard because "the question of the jury did not relate to the law of the case, but to the extent and meaning of the evidence set forth in the stipulation." Maj. op. at 932. I cannot agree with this characterization. The question strongly suggested that the jurors misunderstood the law as expressed in instruction no. 19 concerning the effect to be given to the stipulation.

I believe the court of appeals accurately expressed the importance of the issue as to which the jury's confusion existed, the basis in the court's instructions that gave rise to that confusion, and the duty of the court to instruct the jury clearly to dispel that confusion. I can do no better than to quote Judge Pierce's words, writing for a unanimous panel of that court:

> Here, the contents of the stipulation became critical because the circumstan-

tial evidence linking the defendant to the homicide depended upon who possessed the murder weapon which had been taken in the burglary two days prior to the homicide. The defendant testified at trial, in contrast to the stipulated statement, that Reaves presumably possessed the murder weapon at the time of the homicide.

On its face, the stipulation indicates merely that Reaves stated that the defendant took handguns including the murder weapon. However, during the trial, defense counsel voiced a concern that the jury might not understand that the defense was stipulating only that Reaves made the statements, but not that those statements were true. When the jury sent out the question during deliberations, defense counsel again questioned whether the jury understood this distinction. The language in Instruction No. 19 indicating that the jury must regard stipulated facts "as conclusively proved" and "true for purposes of the trial" certainly could lead to such confusion. The trial court's response to the jury failed to clarify this probable source of misunderstanding.

If a jury affirmatively indicates that it has a fundamental misunderstanding of an instruction, the basis for the presumption that the jury understands the instruction disappears. When the jury indicates to the court that it does not understand some matter of law central to the guilt or innocence of the accused, the court has an obligation to clarify that matter for the jury in a concrete and unambiguous manner. *Leonardo v. People, supra.*

[T]he jury's inquiry regarding Instruction No. 19 adequately indicated its misunderstanding about a matter of law which required a more detailed response than a statement referring the jurors again to the instructions. A jury should be referred back to the instructions only when it is apparent that the jury has overlooked some portion of the instructions or when the instructions clearly answer the jury's inquiry. *Leonardo v.*

*People, supra.* Such is not the case here.

*People v. Alexis,* 794 P.2d at 1031.

I agree with the court of appeals that Michael Dwain Alexis' judgment of conviction for the crime of felony murder should be reversed, but I agree with Justice Erickson's opinion for the majority of this court that the defendant's convictions for second degree burglary, aggravated robbery and theft should be reinstated. Accordingly, I concur with the majority opinion in part and dissent in part.

QUINN and MULLARKEY, JJ., join in this concurrence and dissent.

