The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Brian Kent **HOOD**, Defendant–Appellant.

No. 92CA0540.

Colorado Court of Appeals, Div. I.

March 10, 1994.

Rehearing Denied April 7, 1994.

Certiorari Denied Aug. 8, 1994.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Deborah Isenberg Pratt, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Shelley Gilman, Denver, for defendant-appellant.

Opinion by Chief Judge STERNBERG.

Defendant, Brian Kent Hood, appeals from a judgment of conviction entered upon a jury verdict finding him guilty of conspiracy to commit first degree murder and two counts of criminal solicitation. We affirm.

The evidence revealed that defendant's wife was shot and killed by a masked assailant as she was leaving a lupus support group meeting. Defendant had been involved in an intimate relationship with a married woman, Jennifer Reali. Reali eventually confessed to shooting the victim, but claimed that the defendant had manipulated her, employing various tactics, including use of religious doctrine, to induce her to commit the murder. She claimed that defendant had devised several plans to murder his wife and that he had talked her into carrying out the actual killing.

At the time of his wife's death, defendant was the beneficiary of a $100,000 life insurance policy that had an accidental death benefit of $100,000. Suicide was excluded from coverage, but the policy covered death resulting from either an automobile accident or a crime. Several witnesses testified that defendant told them his wife had to die in a particular way if the death was to be covered under this insurance policy.

Defendant was charged and tried on one count of first degree murder, one count of conspiracy to commit first degree murder, and three counts of criminal solicitation. He was acquitted of first degree murder, but was found guilty of conspiracy and of two counts of criminal solicitation, one of which related to Reali and the second to a friend, Michael Maher.

## I.

Defendant claims that the acquittal on the first degree murder charge requires that the conspiracy conviction be set aside. He argues that the verdicts are inconsistent because the jury acquitted him of first degree murder based upon the same evidence that it used to find him guilty of conspiracy to commit first degree murder. We do not agree.

Acquittal of a substantive offense precludes a conviction for conspiracy to commit that offense only if the evidence relied upon to establish the conspiracy is the very same evidence which was insufficient to prove the substantive offense. Section 18-2-206(2), C.R.S. (1986 Repl.Vol. 8B); *Robles v. People*, 160 Colo. 297, 417 P.2d 232 (1966). A jury will not be permitted to believe evidence for the purpose of the conspiracy and disbelieve the identical evidence for the purpose of the substantive crime. *Armijo v. People*, 170 Colo. 411, 462 P.2d 500 (1969).

However, if there is independent evidence in the record implicating the defendant in the conspiracy, separate and distinct from that supporting the substantive crime, the jury properly may acquit on the substantive charge yet convict on the conspiracy. *See People v. Williams*, 707 P.2d 1023 (Colo.App. 1985).

Every presumption is in favor of the verdict. *See Loos v. People*, 84 Colo. 166, 268 P. 536 (1928). An appellate court must attempt to reconcile and uphold the verdicts if the evidence so permits, *see People v. Moore*, 860 P.2d 549 (Colo.App.1993) and, if the verdicts are consistent under any view of the evidence, the presumption is that the jury took that view. *Loos v. People, supra.*

*See also Aurora v. Loveless,* 639 P.2d 1061 (Colo.1981).

Here, the prosecution relied upon a complicity theory to support the first degree murder charge against defendant. Under the complicity statute, a defendant is held accountable for a criminal offense committed by another if the defendant intentionally aids, abets, or advises the other person in planning or committing the offense. Section 18-1-603, C.R.S. (1986 Repl.Vol. 8B). The essence of the complicity statute is to "punish for *participation* in the criminal act." *See People v. Shannon,* 189 Colo. 287, 539 P.2d 480, 482 (1975) (emphasis added). The jury in this case was also instructed that the defendant must have had knowledge that the other person intended to commit the crime.

In contrast, the essence of the crime of conspiracy is an illegal *agreement* or combination, *see People v. Shannon, supra,* plus an overt act in furtherance of that agreement. Section 18-2-201, C.R.S. (1986 Repl. Vol. 8B). Therefore, if there is any evidence in the record which supports the prosecution's conspiracy charge that is separate and distinct from the evidence supporting a complicity theory, the verdicts are not inconsistent. *See Pooley v. People,* 164 Colo. 484, 436 P.2d 118 (1968).

In this case, Reali testified that her relationship with defendant commenced in March of 1990. They had frequent conversations about religion, during which defendant told Reali that it is in man's nature to commit adultery and murder and that God will understand and forgive such sins. In May or June of 1990, defendant also began discussing with Reali the possibility of harming his wife. He stated that he was unhappy and that he hated his wife, but that divorce was not an option because of his religious beliefs.

Reali stated that defendant also described the details of the insurance policy. He told her that the payoff was $100,000, and that they could split the money. Defendant also mentioned some of the things he wanted to do with the money, such as buying a car or a house.

Reali testified that defendant told her about various plans he had devised to accom-

plish the murder of his wife, such as causing his wife's death in a car accident and staging a robbery at a convenience store during which someone would shoot her. Other ideas involved hitting her over the head with a fallen tree branch so that it would look like an accident or staging a burglary of his house during which she would be shot. Defendant also considered killing his wife in a drive-by shooting as she waited for him to retrieve his car at a restaurant. Yet another plan involved either staging a drug overdose by increasing her dosage of pain pills or putting a placebo in place of medication she needed to combat her medical condition.

With respect to the plans to stage a robbery, Reali testified that, sometime in August of 1990, defendant asked if Reali would be willing to pose as the robber and kill his wife and she agreed. Defendant then found a suitable 24-hour convenience store, scouted the neighborhood around it, discussed how Reali would disguise herself, and selected a date on which to execute the plan. Reali stated that she collected clothes to use as a disguise and purchased ammunition. She claimed that defendant assisted her in preparing a disguise by providing her with gloves and a mask, but other testimony indicated that Reali purchased the mask herself. Defendant also brought his wife to the convenience store on three different occasions so that Reali could stage the robbery and complete the murder. The robbery did not take place, however, because Reali claimed she was too frightened to carry out the plan.

Reali testified that, after the convenience store robbery plan fell through, defendant developed another scheme to kill his wife. His new idea involved Reali grabbing his wife's purse and shooting her as she walked out of a lupus support group meeting. Reali claimed that he described the area and suggested a nearby alley where she could change and conceal her clothing. Reali stated that they discussed the details of their arrangement on the morning of September 12 and, later that day, she shot and killed defendant's wife as planned.

Reali's testimony about the conspiracy was corroborated by others. Several witnesses described defendant's religious beliefs and his deteriorating relationship with his wife. According to the testimony, defendant often expressed his frustrations with his wife's disease and stated that he did not love her, but married her only because she was pregnant. Several witnesses testified that defendant had explained to them that divorce was not an option because of his religious beliefs. He told some of them that he wished his wife would die, but that she would have to die in a particular manner for the death to be covered by the life insurance policy.

In our view, the record reveals ample evidence from which the jury could infer that there was an agreement between defendant and Reali to murder his wife which was completely independent from the evidence linking defendant to the murder as a complicitor. *See Robles v. People, supra.*

The testimony indicated at least two different discussions between Reali and defendant about murdering defendant's wife. The jury could have believed that defendant in August entered into an agreement with Reali to kill his wife during a staged robbery of a convenience store. Evidence of the conspiracy to kill defendant's wife at the convenience store is not so insignificant that it can be ignored merely because the plans were frustrated. *See People v. Shannon, supra.*

This evidence is sufficient to satisfy the element of conspiracy that the parties agree to commit a crime. And, since Reali admittedly committed overt acts in furtherance of the agreement, the evidence was sufficient to sustain the conspiracy conviction. *See People v. Harrison,* 746 P.2d 66 (Colo.App.1987).

Despite the evidence supporting a *conspiracy,* however, the jury also could have found that defendant's involvement in the actual murder several months later did not rise to the degree of involvement required under the *complicity* statute. Because separate parts of Reali's testimony independently supported conspiracy and complicity, the jury could have believed those parts of the testimony relating to the conspiracy, but rejected the portions relating to defendant's participation in the murder as a complicitor.

Thus, while believing on the one hand that defendant and Reali entered into the conve-

nience-store agreement in August, the jury simultaneously could have acquitted defendant of complicity, under the instruction given, because it believed either (1) that defendant did not aid, abet, or advise Reali in the actual murder or (2) that defendant had no knowledge that Reali intended to commit the murder once the convenience store plans were frustrated.

We conclude, therefore, that because there was independent evidence apart from complicity to show conspiracy, the verdict acquitting defendant of first degree murder and the verdict finding him guilty of conspiracy to commit first degree murder are not inconsistent. *See People v. Williams, supra.*

## II.

■ Contrary to defendant's contention, the evidence was sufficient to support his conviction of criminal solicitation of Michael Maher.

To sustain a conviction for criminal solicitation, the evidence must show that the defendant (1) commanded, induced, entreated, or otherwise attempted to persuade another person to commit a felony, (2) with the intent to promote or facilitate the commission of that crime, and (3) under circumstances strongly corroborative of that intent. Section 18–2–301, C.R.S. (1986 Repl.Vol. 8B).

■ A conviction of criminal solicitation must be based on proof beyond the mere verbal act of soliciting another to commit a crime. *People v. Aalbu,* 696 P.2d 796 (Colo. 1985). The prosecution must present enough evidence of the circumstances surrounding the act of solicitation to permit a jury to find beyond a reasonable doubt that the solicitation was done with the specific intent to promote or facilitate the commission of the crime solicited. *People v. Latsis,* 195 Colo. 411, 578 P.2d 1055 (1978).

■ Corroborative circumstances may include activity that does not occur simultaneously with or immediately subsequent to the verbal act of solicitation. *People v. Aalbu, supra.* And, if such circumstances indicate that the defendant intended to promote or facilitate the commission of the crime, it is irrelevant whether the person solicited actu-

ally believes he has been solicited. *See People v. Washington,* 865 P.2d 145 (Colo.1994).

Michael Maher, a friend of defendant, testified that, four months before the victim's murder, defendant had expressed his unhappiness with his marriage and his wife's illness. Defendant described the effect lupus was having on his wife, complained that she was making him miserable, and told Maher that she would be "better off dead." Defendant also described several ideas that he had considered to kill his wife, such as causing a car accident, but stated that "he couldn't kill her . . . and she couldn't kill herself because of insurance."

Defendant told Maher that he had also considered staging a robbery, but that he needed a third person to "pull the trigger" and kill his wife during the robbery.

Maher told defendant that he needed psychological help, but defendant responded, "No, she needs to die." Maher testified that defendant appeared very serious during this discussion; at one point he commented that defendant had obviously thought about this a lot, and defendant answered, "Oh yes, I have."

On cross-examination, Maher testified that the defendant never directly asked him to kill his wife; however, because he was the only person in the room, Maher assumed the defendant was referring to him when defendant suggested he needed someone to pull the trigger.

Defendant's statements that his wife "needed to die" and that he needed someone to "pull the trigger" to kill his wife during a staged robbery satisfied the "verbal act" element of solicitation that the defendant "otherwise attempts to persuade" another to commit a crime.

The fact that defendant actually intended to have his wife murdered is corroborated not only by the circumstances surrounding his conversation with Maher, but also by evidence of his discussions with other people, including Reali, as detailed above.

This evidence, viewed as a whole and in a light most favorable to the prosecution, is substantial and sufficient to support a conclu-

sion by a reasonable person that defendant is guilty beyond a reasonable doubt of soliciting Maher to murder his wife. *See People v. Aalbu, supra.*

### III.

■ We also disagree with defendant's contention that the offense of criminal solicitation merges into the offense of conspiracy to commit that same act so that he cannot be convicted of both crimes.

■ A defendant may be convicted of multiple offenses arising out of a single transaction if the defendant has violated more than one statute. *See* § 18–1–408(7), C.R.S. (1986 Repl.Vol. 8B); *People v. Martinez,* 640 P.2d 255 (Colo.App.1981). However, a defendant may not be convicted of two crimes when one offense is included in the other. *People v. Bartowsheski,* 661 P.2d 235 (Colo.1983).

■ An offense is lesser-included for purposes of merging into a greater offense when the proof of the essential elements of the greater offense necessarily establishes all the elements required to prove the lesser offense. *People v. Henderson,* 810 P.2d 1058 (Colo.1991). A determination of whether one offense is included in another must be based on a comparison of the statutes which define each crime. *People v. Martinez, supra.*

■ Section 18–2–301(1), C.R.S. (1986 Repl.Vol. 8B) states, in pertinent part, that a defendant commits the offense of criminal solicitation when the defendant "commands, induces, entreats, or otherwise attempts to persuade another person to commit a felony." The crime of solicitation does not require that the person solicited actually commit or attempt to commit the act solicited. Once the inducement is made, with the intent to promote the underlying crime and under circumstances that corroborate that intent, the solicitation is complete even if the person solicited does nothing at all.

■ By contrast, the essence of the crime of conspiracy is the illegal *agreement* to commit a crime plus at least one overt act in furtherance of that agreement. Section 18–2–201, C.R.S. (1986 Repl.Vol. 8B). Unlike

the offense of criminal solicitation in which the motive or intent of the person solicited is irrelevant to the question of whether the solicitor has violated the statute, *see People v. Washington, supra,* the intent of both parties to enter into an agreement is central to the offense of conspiracy.

Each offense, therefore, requires proof of at least one fact not required by the other. A conspiracy may be committed without the inducement required for the crime of solicitation, and solicitation may be committed without the parties ever reaching an agreement or without any overt act taken to complete the object of the solicitation. Proof of the elements of solicitation does not necessarily prove conspiracy, and proof of the elements of conspiracy does not necessarily prove solicitation; therefore, neither crime is included in the other and the two crimes do not merge.

### IV.

■ Defendant next challenges the constitutionality of the inventory search of his car and the use at trial of evidence obtained as a result of the search. We perceive no reversible error.

On the night of the murder, the police impounded the car driven by defendant's wife to her lupus support meeting. Less than two days later, the police conducted an inventory search of the car and observed a handgun in the trunk. The officer traced the serial number and discovered that it had been pawned by an individual who later testified at trial. Defendant argues that the search was illegal because it was not performed pursuant to established police procedure and that the witness' testimony should have been suppressed.

Because we find that any error in admitting the testimony was harmless, we do not reach the merits of defendant's challenge to the validity of the search. Even if we were to conclude that the inventory search was unconstitutional because it did not follow established impoundment procedures, the admission into evidence of this testimony could not have materially and substantially prejudiced the defendant, and thus, was harmless

beyond a reasonable doubt. *See People v. Myrick*, 638 P.2d 34 (Colo.1981).

No physical evidence was seized during the search. The gun observed in the trunk was not the gun used in the murder and was not introduced into evidence at trial. And, the witness' testimony was parenthetical to the issue of defendant's involvement in the murder. He testified that defendant bought a handgun from him approximately one month before the murder and that defendant asked if he had any masks in stock at that time.

■ In our view, defendant did not meet his burden of establishing prejudicial error. The mere possibility of prejudice is insufficient to warrant reaching the merits of the constitutionality of the inventory search. *See Topping v. People*, 793 P.2d 1168 (Colo.1990); *People v. Thomas*, 189 Colo. 490, 542 P.2d 387 (1975). Moreover, there was an overwhelming amount of competent evidence, apart from this disputed testimony, to support defendant's conviction. *See People v. Myrick, supra.*

## V.

■ Defendant claims that the trial court erred in denying his motion to suppress evidence obtained during the execution of a search warrant at his office. He argues that the supporting affidavit did not meet the standard of probable cause necessary to justify the issuance of the warrant. We perceive no error.

Six days after the murder of defendant's wife, the police obtained a warrant to search defendant's office at Prudential Insurance of America in Colorado Springs. The warrant authorized a search of the office for life insurance policies, correspondence between defendant and Reali, and travel itineraries for defendant. In executing the search warrant, the police seized a file folder belonging to defendant which contained "insurance papers for his wife's insurance policy." Defendant unsuccessfully moved to suppress the life insurance application and policy on his wife.

We conclude that the affidavit, when measured by a totality-of-the-circumstances standard and read in a common sense manner,

contains sufficient information to support a finding of probable cause to issue a search warrant for defendant's office. *See People v. Pannebaker*, 714 P.2d 904 (Colo.1986).

The affidavit recites the fact of the victim's murder and Reali's arrest for the murder. It also includes facts establishing the existence of an intimate relationship between Reali and the defendant and the existence of a $100,000 life insurance policy on defendant's wife naming defendant as the primary beneficiary. Because defendant was employed by the Prudential Insurance Company of America and the insurance policy on defendant's wife was through the same company, there were reasonable grounds to believe that evidence of the policy would be located at defendant's office. *See People v. Rayford*, 725 P.2d 1142 (Colo.1986).

Although another judge might have required more information on probable cause before issuing a warrant, we conclude that there was a substantial basis for a judicial determination that probable cause existed. *See People v. Turcotte–Schaeffer*, 843 P.2d 658 (Colo.1993).

## VI.

■ During deliberations, the jury sent a note to the trial court which read:

> Is instruction # 2.5 to be used as part of the defense's evidence and considered?

Instruction No. 2.5 presented defendant's theory of the case. The trial court consulted with counsel regarding possible responses to the question. Defense counsel advised that no further instruction be given, but the prosecution asked the court to inform the jury that the instruction is not evidence.

After some discussion with counsel, the court responded to the jury's question by stating: "An instruction is not itself evidence of facts." The court read this instruction along with an instruction already given which explained that the jury's "decision must be made by applying the rules of law which [the court] give[s] to the evidence presented at trial." Defendant contends that the court erred in this response. We do not agree.

Defendant argues that, because the instructions as a whole adequately informed the jury, the court should have referred the jury to the original instructions. He claims that the court's response expressed an opinion as to the truth of the statements in the instruction and "could be interpreted as an invitation to the jury to disregard the theory of the case instruction."

■ A jury should be directed to refer to the original instructions when it is apparent that it has overlooked some portion of the instructions or when those instructions will clearly answer its question. *Leonardo v. People*, 728 P.2d 1252 (Colo.1986). Here, the answer to the jury's question was not to be found in the original instructions; therefore, referring the jury back to those instructions would not have resolved its confusion.

The jury's question demonstrated that it did not understand the purpose of the theory of the case instruction and was confused about whether the instruction was to be considered as evidence in the case. In answering the question, the trial court did not express an opinion as to the factual content of the instruction. Rather, its response was a succinct and correct statement of the law and properly informed the jury that instructions are not evidence, but are to be used as guides in applying rules of law to the evidence presented at trial. *See COLJI–Crim.* (1983) (General Directions for Use).

■ Moreover, even if the additional instruction was not *required* by *Leonardo* and case law interpreting it, we conclude that the giving of an additional instruction is not erroneous so long as the additional instruction itself is proper. *See People v. Fell*, 832 P.2d 1015 (Colo.App.1991).

Thus, the trial court properly responded to clarify the jury's misunderstanding regarding the law of the case as it related to the evidence.

## VII.

■ Defendant contends that the prosecutor's alleged prejudicial remarks and conduct deprived him of his right to a fair trial. We find no reversible error.

We note initially that defendant's 21 specific allegations of misconduct occurred during the course of an 85–day trial that encompassed approximately 21,000 pages of trial transcript. The incidents range from a request to have an exhibit marked for "appellate record" to alleged derogatory comments about defense counsel to allegations that the prosecutor made inappropriate facial expressions at the defendant and defense counsel.

We agree that some of the prosecutor's comments were ill-considered and that his facial expressions and whispered remarks were both unprofessional and offensive. Nevertheless, however much we disapprove of such tactics, the incidents in question, separately or cumulatively, do not rise to the level of severity or frequency that requires reversal. *See People v. Jones*, 832 P.2d 1036 (Colo.App.1991).

In our view, the allegations of misconduct were isolated incidents that occurred during a very lengthy trial and reflected the intensity of trying a high-profile capital case. There is no indication of a deliberate pattern of misconduct or noncooperation by the prosecutor. *See People v. Rubanowitz*, 688 P.2d 231 (Colo.1984). Thus, when considered in the context of the trial as a whole and in light of the evidence before the jury, we conclude that the prosecutor's conduct did not affect the overall fairness of the trial. *See People v. DeHerrera*, 697 P.2d 734 (Colo.1985).

Judgment affirmed.

BRIGGS and KAPELKE, JJ., concur.