[No. 7624.]

## HENWOOD v. THE PEOPLE.

1.   CRIMINAL LAW—*Murder—Death of One by a Blow Intended for Another*—One engaged in an affray with a particular person kills both that person and an innocent bystander. If guilty of murder in the case of his adversary, he is guilty of murder in that of the bystander.

2.   ——*Information For*, includes all the lower grades of homicide.

3.   ——*Evidence—Manslaughter*—Where upon the trial of an information for murder there is evidence sufficient to go to the jury of circumstances tending to excite in the accused a sudden heat of passion, the question whether they amount to the statutory provocation, so as to reduce the offense to the grade of manslaughter (Rev. Stat., sec. 1625,) is for the jury.

4.   ——*Involuntary Manslaughter*—One who, exercising the right of self-defense, discharges a pistol at his adversary, but acts without due regard to the presence of others, and unintentionally kills a bystander, may be declared guilty of involuntary manslaughter.

5.   ——*Instructions*—Where upon the trial of an information for a murder there is evidence sufficient to go to the jury tending to show that the prisoner delivered the fatal shot under the influence of a sudden and irresistible passion, it is error to take from the jury the question of the degree of the crime. The jury must be left free to find guilty of manslaughter, even though the prisoner, testifying in his own behalf, asserts that he acted only in self-defense.

*Error to Denver District Court.*—Hon. GREELEY W. WHITFORD, Judge.

Mr. JOHN T. BOTTOM and Mr. MILNOR E. GLEAVES, for plaintiff in error.

Hon. BENJAMIN GRIFFITH, attorney general, Mr. ARCHIBALD A. LEE, deputy attorney general, Mr. THEODORE M. STUART, JR., assistant attorney general, Mr. WILLAS V. ELLIOTT, district attorney, and Mr. JOHN HORNE CHILES, chief deputy district attorney, for the people.

Mr. JUSTICE GABBERT delivered the opinion of the court:

The plaintiff in error, whom we shall hereafter designate as defendant, was convicted of murder in the second degree and sentenced to the penitentiary for life. He maintains that prejudicial error was committed at the trial in several particulars, only a few of which, however, will be considered.

The defendant shot and killed Sylvester L. Von Phul. For this homicide an information was filed charging him with murder. It was claimed that some of the shots fired by defendant at Von Phul struck George E. Copeland and caused his death, and an information was also filed, charging the defendant with the murder of Copeland. The defendant was tried for the offense so charged, with the result above noted. Copeland was a by-stander, taking no part whatever in the difficulty between the defendant and Von Phul, so that if the defendant committed an offense in taking the life of Von Phul, he was guilty of a like offense in causing the death of Copeland.—*Ryan v. People,* 50 Colo. 99.

At the outset counsel for defendant contends the evidence does not establish that any of the shots fired by defendant took effect in the body of Copeland, and for this reason urges the court should have sustained a motion to instruct the jury to return a verdict of not guilty at the conclusion of the testimony on the part of the people. We do not deem it necessary to either review or go into an extended discussion of the testimony bearing on this subject, as, in our opinion, it was ample to sustain the finding of the jury that shots fired by defendant at Von Phul struck and caused the death of Copeland.

The testimony on the part of the prosecution bearing on the taking of the life of Von Phul is substantially as follows: Several persons, including Von Phul, Copeland and the defendant, were in the bar-room of the Brown Palace hotel. The latter and others with him, at his invitation, were about to take a drink at the bar. Von Phul and a friend or acquaintance of his were also standing at the bar, waiting to be served. After the defendant had ordered the drinks for his

guests, he approached Von Phul, to whom he made a remark, which the witnesses for the people did not hear or understand, when Von Phul turned, and with his fist struck him
in the face, knocking him down, his head, as one of the witnesses for the people expressed it, striking the floor "hard."
As to what then occurred the witnesses do not altogether
agree.  On behalf of the prosecution, the testimony is to the
effect that Von Phul, after knocking the defendant down,
turned his back upon him, and faced the bar-tender; that he
did not attempt to pursue the defendant, or to draw a revolver, or put his hand to his hip pocket, or make any demonstration, that he intended to pursue the defendant; that the
latter raised from the floor and attempted to draw his revolver; that it caught in his clothing; that he unfastened it;
that two men seized and tried to prevent him from shooting;
that he pushed both aside, and commenced to shoot at Von
Phul, and that during this time Von Phul did not advance on
defendant, or make any hostile demonstration whatever.  The
defendant testified that on the afternoon preceding the shooting, he had gone to Von Phul's room in the Brown Palace
hotel, where they were both guests, for the purpose of inducing him to return letters a woman had written to Von Phul,
and which she had commissioned him to obtain; that on this
occasion Von Phul struck him on the left temple with a shoe-
tree, and drew a revolver, saying that he would kill the defendant if he were armed, but as he was not, wouldn't do so
because, as Von Phul expressed it, "They would have it on
me."  The defendant, also, testified that on the following
day, and preceding the night of the encounter in the bar-room,
he was informed that Von Phul had threatened to kill him;
that these threats were communicated to him orally, and by a
note written by the woman mentioned, and that after learning
of these threats, he purchased the revolver with which he did
the shooting.  With respect to the affray in the bar-room,
the defendant testified that Von Phul entered the room with
a friend after he did, and stood at the bar talking with this

friend; that he changed positions, which brought the defendant and Von Phul quite close; that he, the defendant, then said to Von Phul, "Won't you consider what happened yesterday afternoon," to which Von Phul replied: "I am going upstairs and I am going to grab that grey-haired (using a foul epithet) by the hair and pull him out of there, and show him who is master here;" that he, the defendant, then said: "I am not going to allow you to get that over me," and that Von Phul then said: "I will get you first, you understand," following this remark with a blow with his right hand on the point of defendant's chin, which felled him to the floor and dazed him for a minute. As to what then occurred, the defendant stated: "As I lifted myself up from the ground, I remember this part, and that was, to see that man reach for the gun. I am sure he reached for it, and it was only a movement on my part to protect my life, and I pulled my pistol and shot him. I fired all the shots the gun contained, but I don't know how many." In brief, as we understand the testimony of defendant, it is, that as he was rising from the floor, Von Phul looked at him, and placed his right hand at his hip pocket as though to draw a revolver, and that for this reason, he drew his weapon and fired at Von Phul. Three of the shots fired struck Von Phul, one in his right wrist and the other two in his back. The defendant also testified he thought Von Phul was armed. There was testimony on the part of the people to prove that he was not, and probably some evidence tending to prove that the defendant knew he was not. The bar-tender testified that Von Phul stepped from his friend's left to his right; that this change of position placed him next to the defendant; that Von Phul asked his friend to be permitted to make this change, saying to him: "There is a dirty —————————; I licked him once, and will lick him again, but he won't fight." This witness also stated: "Henwood did not go over to Von Phul; Von Phul went over to Henwood," and that Von Phul was looking at the defendant at the time the shots were fired. Another witness on behalf

of defendant testified that Von Phul, after knocking the defendant down, was almost facing him, with his right hand on his hip pocket, when the defendant commenced shooting; while a third witness for the defendant testified that Von Phul, after knocking defendant down, looked at him with a sneer, and had one hand resting on the bar and the other on his hip, and that at the time the defendant was drawing his revolver, Von Phul was looking directly at him. There was also testimony on the part of the people to the effect that defendant had threatened to kill Von Phul. This the defendant denied. The testimony stands undisputed that the defendant did not fire a single shot until after he was knocked down, and that he commenced shooting as soon thereafter as he could draw his revolver.

The court instructed the jury on the law of murder in the first and second degree, and also on the law of self-defense, but stated to the jury: "There is no manslaughter in this case."

Sections 1625 to 1628, inclusive, R. S., 1908, are as follows:

"Manslaughter is the unlawful killing of a human being without malice, express or implied, and without any mixture of deliberation whatever. It must be voluntary, upon a sudden heat of passion caused by a provocation apparently sufficient to make the passion irresistible, or involuntary in the commission of an unlawful act, or a lawful act without due caution or circumspection."

"In cases of voluntary manslaughter there must be a serious and highly provoking injury inflicted upon the person killing, sufficient to excite an irresistible passion in a reasonable person, or an attempt by the person killed to commit a serious personal injury on the person killing."

"The killing must be the result of that sudden, violent impulse of passion supposed to be irresistible, for if there should appear to have been an interval between the assault or provocation given and the killing sufficient for the voice of

reason and humanity to be heard, the killing shall be attributed to deliberate revenge, and punished as murder."

"Involuntary manslaughter shall consist in the killing of a human being without any intent so to do; in the commission of an unlawful act, or a lawful act, which probably might produce such a consequence in an unlawful manner, provided always, that where such involuntary killing shall happen in the commission of an unlawful act, which, in its consequences, naturally tends to destroy the life of a human being, or is committed in the prosecution of a felonious intent, the offense shall be deemed and adjudged to be murder."

These statutory provisions are a recognition of the frailty of human nature, the purpose of which is to reduce a homicide committed in the circumstances therein contemplated to the grade of manslaughter, either voluntary or involuntary, as the facts may warrant. From the statutes above quoted it appears that the unlawful killing of a human being, without malice and deliberation, upon a sudden heat of passion caused by a provocation apparently sufficient to excite an irresistible passion in a reasonable person constitutes manslaughter; and that involuntary manslaughter may consist in the taking of a human life without any intent so to do in the commission of a lawful act without due caution or circumspection.

The information charged murder in the first degree, and therefore, included all the lower grades of criminal homicide. If there was no evidence upon which a verdict of manslaughter could be based, then the trial court was justified in instructing the jury to that effect. On the other hand, if there was evidence relevant to the issue of manslaughter, its credibility and force were for the jury to consider in determining the facts, and not as a matter of law for the decision of the court.—*Crawford v. People,* 12 Colo. 290; *Stevenson v. United States,* 162 U. S. 313.

So that, whether it was proper to withdraw from the jury the question of the guilt of the defendant of any particu-

lar grade of the offense included in the information, must be answered by considering whether there was any evidence tending to establish such grade.—*Allison v. State,* 86 S. W. (Ark.) 409.

The evidence shows without question that immediately preceding the shooting the defendant and Von Phul were engaged in a conversation in a public bar-room, where many were present; that Von Phul knocked defendant down with his fist by a blow so violent that defendant struck the floor with great force, his head striking "hard," and that as defendant raised up he drew a revolver and commenced firing at Von Phul. This statement of what occurred shows circumstances tending to excite a "sudden heat of passion." Whether they amounted to the statutory "provocation" and were sufficient to cause passion on the part of the defendant which the statute denominates "irresistible," was not for the court to determine, either as a question of law or of fact, but one of fact for the jury to determine from the evidence in the case. The defendant claimed to have fired the shots at Von Phul with the intention of striking him for the purpose of protecting his life. If the facts justified him in so doing, his action in this respect would be lawful; but if he did so without due caution or circumspection, taking into consideration the presence of others in the bar-room, he was not guiltless, but might be adjudged guilty of involuntary manslaughter in causing the death of Copeland; but with the question of manslaughter taken from the jury, there was nothing left for them to do but to find him guilty of murder, when they found, as they evidently did, that defendant was not justified in firing the shots in self-defense, thus depriving them of their exclusive province to determine the grade of the offense from the evidence in the case, notwithstanding that there was evidence upon which a verdict of manslaughter might have been based.

We do not mean to intimate what the verdict should have been, but as there was not an entire absence of evidence

tending to establish the crime of manslaughter, it was error
for the court to take that question from the jury by instruct-
ing them "that there is no manslaughter in this case."

Counsel for the prosecution insist that it was not error
to so instruct, for the reason the defendant stated that at the
time he shot at Von Phul he had no feeling of either passion
or revenge. An examination of the record convinces us that
what the defendant meant by this statement was, that he had
no feeling of passion or revenge when he purchased the re-
volver, and was not referring to the time when he fired the
shots at Von Phul. It is also contended on behalf of the peo-
ple, that as the defendant testified he shot to protect his life,
manslaughter was not involved. In other words, the conten-
tion is, that defendant, having claimed that he acted in self-
defense, he is precluded from asserting that the shooting was
done under circumstances which reduce the homicide to man-
slaughter. In the circumstances of this case, we do not re-
gard this contention as tenable, as there was evidence tending
to prove that the homicide was manslaughter.

In *Stevenson v. U. S., supra,* the testimony tended to
establish that the deceased, by his conduct, had provoked pas-
sion on the part of the defendant, and also that the latter had
acted in self-defense. There, as here, it was urged that the
two defenses were incompatible. On that subject the court
said (at page 322) :

"It is objected that while the evidence above set forth
was proper to be submitted to the jury upon the issue of self-
defense, it was not of that character to even raise an issue as
to the grade of the crime, if the theory of self-defense were
not sustained. We do not see the force of the objection. The
fact that the evidence might raise an issue as to whether any
crime at all was committed is not in the least inconsistent with
a claim that it also raised an issue as to whether or not the
plaintiff in error was guilty of manslaughter, instead of mur-
der. It might be argued to the jury under both aspects, as
an act of self-defense and also as one resulting from a sudden

passion, and without malice. The jury might reject the theory of self-defense as they might say the shot from the pistol of the deceased had already been fired, and the plaintiff in error had not been harmed, and therefore firing back was unnecessary and was not an act of self-defense. But why should the other issue be taken from the jury, and they not be permitted to pass upon it as a question of fact."

As there was testimony tending to prove that defendant acted under the influence of passion provoked by Von Phul, and that he also acted in self-defense, we think the rule announced in *Kent v. People,* 8 Colo. 563, applicable, which is to the effect that the defendant was entitled to have the entire *res gestae* laid before the jury, to be considered as a whole, without distinction as to which party introduced the several matters of evidence.

In this connection the *Crawford* case, *supra,* is instructive. In that case chief justice Helm, after stating what had occurred between the deceased, his father, who was with him, and the defendant, from which it appeared there was an affray between the parties, stated what then occurred as follows:

"That in the confusion and excitement, and further incensed by these additional epithets, defendant took a small shotgun loaded with a single charge of fine shot, and went to the door, not designing, as he asserts, to take the life of Pratt, but with a view of defending himself and protecting his premises. The gun was, however, discharged, and the son was unintentionally killed."

The trial court had refused to instruct on manslaughter. In the opinion, the learned chief justice, after enumerating instances when it would be proper to withdraw from the consideration of the jury the question of the grades of manslaughter, said:

"But where there is an affray, and where self-defense is a defense relied on, the court exercises an exceedingly dangerous prerogative in refusing to charge upon the minor, as

well as the graver, offenses covered by the indictment. * * * By statute the accused in criminal cases is permitted to become a witness, and when once upon the stand, all the ordinary rules of evidence apply to him. He is subject to cross-examination; his testimony may be impeached; the circumstances under which he testifies may be considered; and perjury on his part can be as readily disclosed as in the case of other witnesses. The jury are to give his testimony such credit and such weight as, in their judgment, shall, under all the circumstances, be proper. They may accept it as true, or they may reject it as false. * * * The evidence shows without question that at the time of the homicide there was a quarrel between defendant and Gideon Pratt, followed by an affray, during which violent, profane and angry words were used by both parties, and in which they engaged in a physical rencounter of considerable duration, grappling and exchanging blows. The firing of the fatal shot grew out of this affray, and was directly connected with, and a part of it. There were circumstances tending to excite a "sudden heat of passion." Whether such circumstances amounted to the statutory "provocation" or caused the passion which the statute denominates "irresistible," was not for the court to determine."

It is also urged by the prosecution that if there was a preconceived designed on the part of the defendant to kill Von Phul, the homicide was murder, notwithstanding the fact that there was provocation. This contention is based upon the fact that defendant had purchased a revolver after the difficulty in Von Phul's room, and the testimony to the effect that defendant had threatened to kill Von Puhl. We cannot determine as a fact that defendant sought Von Phul in the barroom with the intention of taking his life. The defendant did buy a revolver the day preceding the shooting. He says he bought it for his protection. There was evidence on the part of the people that he had threatened to kill Von Phul. This the defendant denied, so that whether he sought out

Von Phul for the purpose of taking his life, and pursuant to a preconceived design to do so, shot him, or whether he spoke to him without such design, and the shooting was the result of such a degree of passion caused by a provocation on the part of Von Phul as would reduce 'the homicide to manslaughter, were questions for the jury to determine, and neither the trial court nor this court can invade that province.

Counsel for the people cite many cases wherein it is held that the trial court did not err in taking the question of manslaughter from the jury. It can serve no useful purpose to review them. They are all based on the principle that when there is no evidence to establish manslaughter it is not error to take that question from the jury, and point out from the testimony in each of the cases, that such was the fact. This constitutes the distinguishing feature between these cases and the one at bar. All authorities, both text writers and reported cases, uniformly hold that where there is testimony tending to prove manslaughter, it is error to refuse to instruct the jury on that offense, or by an instruction, to take that question from them, for the reason, as held in the Stevenson case, supra, (quoting from the syllabus) :

"On the trial of a person indicted for murder, although the evidence may appear to the court to be simply overwhelming to show that the killing was in fact murder, and not manslaughter, or an act performed in self-defense, yet, so long as there is evidence relevant to the issue of manslaughter, its credibility and force are for the jury, and cannot be matter of law for the decision of the court."

In Rutherford v. The State, 16 Texas Court of Appeals 649, the case had once been before that court, and reversed for the reason that the trial court had refused to give an instruction on manslaughter. At the second trial the trial judge again refused to instruct on this subject. In reviewing the case a second time, the appellate court said:

"We still think that a charge upon the law of manslaughter is demanded by the evidence. We have never held,

as the learned judge seems to think we have, that the evidence would justify a verdict for manslaughter. It was not, and it is not, our province to determine that question when considering the law of the case, nor was, or is it, the province of the trial judge to determine that question when instructing the jury. That was a question exclusively for the jury to decide. His idea seems to be that if the evidence, in his opinion, would not justify a verdict of manslaughter, then he ought not to charge the law of that offense. Such is not the rule of the law. If there is evidence in the case tending to raise the issue of manslaughter, it is the duty of the trial judge to charge the law of that offense, regardless of his own opinion as to whether or not such evidence would justify a conviction for said offense. It is the business of the jury, and not the court, to pass upon the sufficiency of the evidence. Our constitution and laws guarantee a citizen charged with felony the right of trial by jury; and it is made the duty of the jury, and not of the judge, to pass upon the credibility of the witnesses and determine the weight of the testimony. * * * When the judge assumes the power of determining the sufficiency of the evidence to support an issue presented by it, and refuses to charge the law relating to that issue, he invades the exclusive province of the jury, and denies to the citizen on trial the full benefit of the trial by jury, and thus deprives him of a trial by due course of the law of the land."

The results of the affray between Von Phul and the defendant are deplorable in the extreme, but this did not deprive the defendant of the right to have his guilt or innocence determined by a jury according to the law of the land. The constitution and laws of the state provide for the trial of a person charged with murder by a jury. They, and they alone, must determine the facts, and no court, either trial or appellate, has a right to constitute itself a trier of facts, and thus invade the province of a jury. No matter how lightly the court may regard the testimony offered on behalf of the defense, the question of its weight and the credibility of the

witnesses is to be determined by the jury, properly instructed as to the law.   Unless this course is followed, a defendant is deprived of his constitutional right of a trial by jury.   It is manifest there was testimony tending to prove manslaughter. Whether or not is. was sufficient to justify a verdict of that character was for the jury to determine, and not the court. By advising the jury that there was no manslaughter in the case, the trial judge deprived the defendant of his unquestioned right guaranteed by the fundamental and statutory law of the state, to have a jury determine the grade of the offense for which he was on trial.

The judgment of the district court is reversed, and the cause remanded for a new trial.

*Reversed and Remanded.*

Decision *en banc.*

Mr. JUSTICE SCOTT not participating.