Harold SANCHEZ, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 90SC262.

Supreme Court of Colorado,
En Banc.

Nov. 12, 1991.

Rehearing Denied Dec. 9, 1991.

David F. Vela, Colorado State Public Defender, Douglas D. Barnes, Deputy State Public Defender, Denver, for petitioner.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Cheryl A. Linden, Asst. Atty. Gen., Denver, for respondent.

Justice KIRSHBAUM delivered the Opinion of the Court.

The defendant, Harold Sanchez, was convicted in Denver District Court of heat of passion manslaughter, in violation of sec-

tion 18–3–104(c), 8B C.R.S. (1986). In affirming that conviction on appeal, the Court of Appeals held that the trial court's failure to specifically answer questions asked by the jury regarding the relationship of the defense of self-defense to the offense of heat of passion manslaughter did not constitute error. *People v. Sanchez*, No. 87CA1501 (Colo.App. Mar. 8, 1990) (not selected for official publication). Having granted certiorari to review the Court of Appeals judgment with respect to that issue, we affirm. However, we disapprove of that portion of the Court of Appeals opinion holding that a person may not assert the affirmative defense of self-defense to a charge of heat of passion manslaughter.

## I

Sanchez is approximately forty-four years old, of slim build, and is partially disabled. He suffers from a weakness of his lower limbs that has caused occasional involuntary muscle spasms in his legs and loss of agility and quickness.

In 1975 or 1976, he met Daniel Leyba at a recreation gym. Leyba was a muscular, six-foot tall person who weighed between 212 and 250 pounds during the time pertinent to these proceedings. During the next few years the two met socially on infrequent occasions. At some time during 1980, while at Sanchez' home, Leyba challenged Sanchez to an arm wrestling contest and, when Sanchez refused, broke one of Sanchez' fingers.

Sanchez moved into a Denver apartment complex in 1982. A year later Leyba, having separated from his wife, moved into the same complex. In early 1984, Sanchez, who at the time was suffering from a disabling back condition, helped Leyba employ an attorney to represent Leyba in his dissolution of marriage proceeding. On May 10, 1984, Sanchez accompanied Leyba on a visit to the latter's attorney. During the return drive, Leyba stopped the car at a park. An argument erupted, during which Leyba knocked Sanchez to the ground, removed a hammer from the car and began swinging the hammer at Sanchez. Sanchez testified that Leyba later calmed down and helped Sanchez back into the car.

Sanchez reported this incident to police officials and indicated that he feared further harm from Leyba. When the officials informed Sanchez that he had the right to defend himself in his own residence with a gun, he purchased two hand guns and placed both weapons on a nightstand in his apartment.

On May 15, 1984, Sanchez underwent surgery to alleviate his back condition. When he returned home from the hospital, he discovered that the tires and body of his van had been slashed with a knife. Leyba offered to pay for the damage without explanation, although he never admitted the vandalism.

On April 9, 1985, Sanchez discovered fecal matter on his doorstep. That evening Leyba pounded on Sanchez' door, demanding removal of the excrement. When Sanchez opened the door, Leyba entered and began arguing. Sanchez testified that Leyba threatened him with forced anal intercourse and that when he told Leyba that he intended to have him evicted from the apartment complex, Leyba threatened to kill him.

The next night Leyba again pounded on Sanchez' door. Sanchez testified that when he opened the door, Leyba struck Sanchez, throwing him against a wall and onto a bed; that Leyba then rushed out of the apartment, only to return holding his left hand behind his back; and that as Leyba advanced toward Sanchez, Sanchez picked up both guns from his nightstand and began shooting. Sanchez testified that he continued to shoot as Leyba backed out of the apartment and entered a nearby laundry room. Leyba received several wounds, one of which caused his death. Sanchez also testified that he was afraid Leyba kept a hammer in the laundry room, although no weapon was found on Leyba or in the laundry room.

Immediately after the shooting, Sanchez drove to his daughter's residence in California, stopping along the way to bury the guns. Several days later he returned to

Colorado, obtained an attorney and surrendered himself to police officials. He was subsequently charged with the offenses of murder in the first degree, murder in the second degree, heat of passion manslaughter, reckless manslaughter and criminally negligent homicide.

At trial, Sanchez asserted the affirmative defense of self-defense. The trial court instructed the jury that self-defense constituted an affirmative defense to the offenses of first degree murder, second degree murder and heat of passion manslaughter.[1]

During the course of jury deliberations, the jury foreman sent the following two questions to the trial court:

If we believe there is an element—however small or large of self defense does that rule out the possibility of manslaughter—Heat of Passion[?]

Is there such a thing as self defense in combination w/ the elements of Manslaughter Heat of Passion[?]

The trial court met with the prosecuting attorney and defense counsel to discuss possible responses to these questions. Arguing that the questions implied a jury conclusion that Sanchez had acted in self-defense, defense counsel requested the following instruction: "[I]f the people have failed to prove to your satisfaction beyond a reasonable doubt that Mr. Sanchez did not act in self-defense, then he must be acquitted." Defense counsel also argued that the questions suggested that the jury had rejected the first and second degree murder charges and that the court should in some fashion withdraw those charges from further jury consideration.[2] The prosecuting attorney asserted that the questions were ambiguous as to the status of the jury's deliberations and asked the

trial court to inform the jury that self-defense may not be considered a defense to the offense of heat of passion manslaughter.

The trial court ultimately announced its proposed response to the jury's questions as follows:

Over the objection of both counsel, this is going to be my response. "Regarding your two inquiries, you have been adequately instructed by the court in the written instructions. It would not be appropriate to instruct you further."

. . . .

I think the fact that they have questions could be resolved by reading of the instructions, and I think any attempt by this court to try and construe what's in the back of their mind or to instruct them any further would be to invite reversible error.

Soon after receiving the trial court's formal response, the jury returned verdicts of guilty to the offense of heat of passion manslaughter and not guilty to all other alleged offenses.

On appeal, the Court of Appeals affirmed Sanchez' conviction. The court held that the trial court's response to the jury's questions did not constitute error. The court also determined that the trial court did err in instructing the jury that the defense of self-defense was applicable to the charge of heat of passion manslaughter, but that the error was harmless.

## II

■ Sanchez contends that by submitting the two questions the jury demonstrated a fundamental misunderstanding of the applicability of the affirmative defense of self-defense to the offense of heat of passion manslaughter and that the trial court

---

1. In so doing, the trial court overruled the prosecuting attorney's objection to the defendant's assertion that self-defense is an affirmative defense to the offense of heat of passion manslaughter.

2. In *People v. Lewis*, 676 P.2d 682 (Colo.1984), this court expressed disapproval of a trial court's instruction to a deadlocked jury that if it had reached unanimity as to the defendant's guilt of a greater charge and of lesser included

charges, but could not unanimously agree as to which offense was committed, the jury must return a verdict of guilty only of the lesser included offense. Holding such instruction to be coercive and incompatible with the requirements of unanimity in jury verdicts, we set forth certain guidelines to assist trial courts in instructing deadlocked juries deliberating charges involving lesser offenses.

therefore erred in failing to reinstruct the jury specifically in response to those questions. We disagree, although for reasons that differ from the analysis adopted by the Court of Appeals.

The American Bar Association *Standards for Criminal Justice* contains the following provisions respecting the responsibility of a trial judge with respect to questions asked by a jury during jury deliberations:

(a) If the jury, after retiring for deliberation, desires to be informed on any point of law, they shall be conducted to the courtroom. The court shall give appropriate additional instructions in response to the jury's request unless:

(i) the jury may be adequately informed by directing their attention to some portion of the original instructions;

(ii) the request concerns matters not in evidence or questions which do not pertain to the law of the case; or

(iii) the request would call upon the judge to express an opinion upon factual matters that the jury should determine.

(b) The court need not give additional instructions beyond those specifically requested by the jury, but in its discretion the court may also give or repeat other instructions to avoid giving undue prominence to the requested instructions.

(c) The court may recall the jury after they have retired and give them additional instructions in order:

(i) to correct or withdraw an erroneous instruction;

(ii) to clarify an ambiguous instruction; or

(iii) to inform the jury on a point of law which should have been covered in the original instructions.

(d) The provisions of standard 15–3.6(d) and (f) also apply to the giving of all additional instructions, except that the court in its discretion shall decide whether additional argument will be permitted.

ABA *Standards for Criminal Justice* 15–4.3(a) (2d ed. 1980). In *Leonardo v. People,* 728 P.2d 1252 (Colo.1986), we held that trial judges should use these provisions as a guide when applicable.

Here, the jury received detailed instructions describing the elements of the offenses charged and the affirmative defense of self-defense.[3] The trial court also instructed the jury that the affirmative defense of self-defense applies to heat of passion manslaughter. While the jury's questions indicated concern, the instructions as a whole did inform the jury that self-defense, if found, constituted a justification for Sanchez' conduct and would support a verdict of not guilty to the offense of heat of passion manslaughter.

It must be presumed that the jury understood the instructions presented to it. *Leonardo,* 728 P.2d at 1256; *People v. Moody,* 676 P.2d 691, 697 (Colo.1984).

However, as this court recognized in *Leonardo:*

[W]hen the jury indicates to the judge that it does not understand an element of the offense charged or some other matter of law central to the guilt or innocence of the accused, the judge has an

---

**3.** The instruction defining the offense of heat of passion manslaughter contained the following pertinent statements:
The elements of Manslaughter (Heat of Passion) are:
(1) That the defendant,
(2) in the City and County of Denver, State of Colorado, between the dates of April 9, 1985[,] and April 11, 1985,
(3) knowingly,
(4) caused the death of another person,
(5) under circumstances where the act causing the death was performed, upon a sudden heat of passion, which was
(6) caused by a serious and highly provoking act of the intended victim,

(7) affecting the defendant sufficiently to excite an irresistible passion in a reasonable person,
(8) and there was no interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard,
(9) without the affirmative defense in Instruction No[s]. 17–20.
If you are not satisfied beyond a reasonable doubt that the defendant is guilty of the offense charged, he may, however, be found guilty of any lesser offense, the commission of which is necessarily included in the offense charged if the evidence is sufficient to establish his guilt of the lesser offense beyond a reasonable doubt.

obligation to clarify that matter for the jury in a concrete and unambiguous way. 728 P.2d at 1256. The issue here is whether the jury's questions indicated so significant a misunderstanding of a matter central to the determination of guilt or innocence that a supplemental instruction was required.

The jury's first question to the court, regarding whether self-defense precludes a finding of heat of passion manslaughter, is clearly answered by Jury Instruction No. 17. That instruction contains the following directions:

> The affirmative defense of self-defense as set forth in these instructions is an affirmative defense to the charge of Murder in the First Degree and Murder in the Second Degree and Manslaughter (Heat of Passion) and not a defense to any other charges contained in these instructions.

> If you find that the Defendant is not guilty of the crimes of Murder in the First Degree and Murder in the Second Degree and Manslaughter (Heat of Passion) because the People have failed to prove the Defendant was not acting in self-defense, you must find him not guilty of the crimes of Manslaughter (Recklessly) and Criminally Negligent Homicide.

> You are reminded that the Prosecution has the burden of proving the guilt of the Defendant to your satisfaction beyond a reasonable doubt as to all of the elements of the crime charged, as well as the burden of disproving the affirmative defense of self-defense beyond a reasonable doubt.

The instruction explains that a verdict of not guilty must be returned as to all charged offenses, including heat of passion manslaughter, if the jury concludes that the prosecution failed to meet its burden of

disproving the defense of self-defense. When the answer to a jury's question is contained in the initial jury instructions, a trial court does not err by directing the jury's attention to those instructions. *People v. Alexis,* 806 P.2d 929 (Colo.1991); *Leonardo,* 728 P.2d at 1256 n. 4; *see People v. Kittrell,* 786 P.2d 467, 470 (Colo.App. 1989).

Sanchez argues that the trial court was obligated to direct the jury's attention to the specific portion of the instructions containing the answer to the inquiry. ABA *Standards for Criminal Justice* § 15–4.3(a)(i) (2d ed. 1980); *Leonardo,* 728 P.2d at 1255. However, in our view the instructions as a whole contain accurate definitions of the affirmative defense of self-defense and of the elements of the crime of heat of passion manslaughter, as well as a description of the relationship between the two. Under the circumstances here present, the trial court's direction to re-read the instructions was sufficient to answer the jury's first question.

The initial jury instructions also contain an adequate answer to the jury's second question. They clearly state that self-defense is an affirmative defense to the crime of heat of passion manslaughter and that a finding that Sanchez acted in self-defense precludes a verdict of guilty with respect to that offense.

Unlike the situation in *Leonardo,* the jury instructions in this case were capable of resolving the misunderstandings of law which the jury expressed in its questions to the court. *See People v. Alexis,* 806 P.2d 929 (Colo.1991).[4] We therefore agree with the Court of Appeals conclusion that the trial court did not err in responding to the jury's questions by references to the instructions previously given.

---

**4.** Sanchez also argues that the jury's questions imply that they found some degree of self-defense present in this case, or at least found that the prosecution had failed to prove beyond a reasonable doubt that Sanchez did not act in self-defense. If the jury had reached such a finding, its guilty verdict would indicate a failure to follow the jury instructions. However,

the questions posed by the jury do not permit any inference of what intermediate hypotheses the jury may have established at that stage of the deliberations. The evidence falls far short of the showing required to rebut the presumption that the jury understood and followed the trial court's instructions. *See People v. Moody,* 676 P.2d 691 (Colo.1984).

## III

The Court of Appeals also concluded that the trial court erred in instructing the jury that self-defense is an affirmative defense to the crime of heat of passion manslaughter, but determined that the error was harmless because it inured to the benefit of Sanchez. The conclusion that self-defense cannot constitute an affirmative defense to the offense of heat of passion manslaughter was based on the court's reading of this court's decision in *People v. Fink,* 194 Colo. 516, 574 P.2d 81 (1978), wherein we held that self-defense is not available as an affirmative defense to the offenses of reckless manslaughter and criminally negligent homicide involving an act of criminal negligence. In our view, neither that holding nor the rationale upon which it is based compels the conclusion that self-defense may not be considered an affirmative defense to the offense of heat of passion manslaughter.

The General Assembly has defined the circumstances in which a person commits the offense of heat of passion manslaughter as follows:

[The person] knowingly causes the death of another person under circumstances where the act causing the death was performed upon a sudden heat of passion, caused by a serious and highly provoking act of the intended victim, affecting the person killing sufficiently to excite an irresistible passion in a reasonable person; but, if between the provocation and the killing there is an interval sufficient for the voice of reason and humanity to be heard, the killing is murder.

§ 18–3–104, 8B C.R.S. (1986). Heat of passion manslaughter is a crime of general rather than specific intent. *People v. Delaney,* 44 Colo.App. 366, 620 P.2d 44 (1980).

The General Assembly has defined the affirmative defense of self-defense in section 18–1–704, 8B C.R.S. (1986), which statute contains the following pertinent provisions:

(1) ... a person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for that purpose.

(2) Deadly physical force may be used only if a person reasonably believes a lesser degree of force is inadequate and:

(a) The actor has reasonable ground to believe, and does believe, that he or another person is in imminent danger of being killed or of receiving great bodily injury; or

(b) The other person is using or reasonably appears about to use physical force against an occupant of a dwelling or business establishment while committing or attempting to commit burglary ... or

(c) The other person is committing or reasonably appears about to commit kidnapping ... robbery ... sexual assault ... or assault....

§ 18–1–704, 8B C.R.S. (1986). The statute requires the presence of both reasonable belief and actual belief. However, although a defendant invoking this defense must establish that he or she acted in a reasonable manner under the circumstances, we have also suggested that in certain circumstances instinctive reaction may be considered reasonable conduct. *Vigil v. People,* 143 Colo. 328, 334, 353 P.2d 82, 85 (1960). The General Assembly has indirectly recognized this factor by authorizing the defense of self-defense when a person acts on appearances rather than on reality. § 18–1–704(2)(b), (c), 8B C.R.S. (1986); *see People v. Idrogo,* 818 P.2d 752 (Colo.1991). Thus it is clear that the fact finder must weigh all relevant circumstances to determine whether a person asserting the defense of self-defense has acted as a reasonable person would act in similar circumstances. *See* W. LaFave & A. Scott, *Criminal Law* § 5.7 at 456–57 (1986). *See also* Comment, *Provoked Reason in Men and Women: Heat–Of–Passion Manslaughter and Imperfect Self–Defense,* 33 UCLA L.Rev. 1679 (1986); Dressler, *Rethinking Heat–Of–Passion: A*

*Defense in Search of a Rationale,* 73 J.Crim.L. & Criminology 421 (1982).

The offense of heat of passion manslaughter is distinct from the offense of reckless manslaughter as defined by section 18–3–104(1)(a), 8B C.R.S. (1986). The latter offense requires the accused to have "recklessly cause[d] the death of another person." The distinction lies in the *mens rea* elements of the two offenses. A person acts recklessly when that person "consciously disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists." § 18–1–501(8), 8B C.R.S. (1986). A conscious disregard of known dangers is, by its very definition, incompatible with the concept of reasonableness, wherein known dangers are considered before conduct occurs.

■ The *mens rea* element of heat of passion manslaughter also differs significantly from the culpable mental state applicable to conduct constituting criminal negligence. "A person acts with criminal negligence when, through a gross deviation from the standard of care that a reasonable person would exercise, he fails to perceive a substantial and unjustifiable risk that a result will occur or that a circumstance exists." § 18–1–501(3), 8B C.R.S. (1986). A defendant cannot simultaneously affirm the unreasonable conduct that characterizes the offense of criminally negligent homicide through acts of criminal negligence and contend that the offense is excusable because the conduct was reasonable.

The mental state prescribed by the General Assembly for heat of passion manslaughter is "irresistible passion in a reasonable person." § 18–3–104, 8B C.R.S. (1986). We have stated that the legislation creating the offense of heat of passion manslaughter constitutes a "recognition of the frailty of human nature, the purpose of which is to reduce a homicide committed in the circumstances therein contemplated to the grade of manslaughter, either voluntary or involuntary, as the facts may warrant." *Henwood v. People,* 54 Colo. 188, 193, 129 P. 1010, 1012 (1913). In distinguishing the offense of heat of passion manslaughter from reckless manslaughter

and providing that the conduct proscribed by the former offense is not unreasonable conduct, the General Assembly has concluded that conduct occurring spontaneously from great provocation is conduct that even a reasonable person could be expected to perform. In emphasizing the critical function performed by the jury when defendants have asserted self-defense as an affirmative defense to the alleged offense of voluntary manslaughter, we have recognized that in some circumstances a person's sudden and impulsive reaction to extreme provocation may be viewed as a response any reasonable person would make. *English v. People,* 178 Colo. 325, 330–31, 497 P.2d 691, 694 (1972); *Henwood v. People,* 54 Colo. 188, 193, 129 P. 1010, 1012 (1913). Other courts have also recognized this distinction. *Gregg v. State,* 233 Ga. 117, 210 S.E.2d 659 (1974); *Mendez v. State,* 491 N.E.2d 532 (Ind.1986); *Commonwealth v. Stehley,* 350 Pa.Super. 311, 504 A.2d 854 (1986). *But see State v. Ruelas,* 165 Ariz. 326, 798 P.2d 1335 (Ariz.App.1990).

In *People v. Fink,* 194 Colo. 516, 574 P.2d 81 (1978), we held that the trial court did not err in refusing to give a sequential instruction to the effect that self-defense constituted a defense to the offense of reckless manslaughter and criminally negligent homicide involving criminal negligence. Noting that a person asserting an affirmative defense first admits that the alleged offense occurred and then seeks to establish a recognized justification for such conduct, *People v. Huckleberry,* 768 P.2d 1235, 1239 (Colo.1989), we reasoned that a jury finding reckless or criminally negligent conduct could not simultaneously find that the defendant acted reasonably. *Fink,* 194 Colo. at 518, 574 P.2d at 83. We specifically noted that our holding did not preclude a defendant from offering evidence of self-defense to suggest that particular conduct was reckless or criminally negligent rather than intentional. *Id.,* 194 Colo. at 519, 574 P.2d at 83.

In view of the dissimilarity of the *mens rea* element required for commission of the offense of heat of passion manslaughter and the culpable mental state required for

the offenses of heat of passion manslaughter and criminally negligent homicide through acts of criminal negligence, *Fink* does not require the conclusion that the defense of self-defense is not available to defendants charged with the offense of heat of passion manslaughter.[5] As the General Assembly has recognized, a reasonable person suddenly and unexpectedly confronted with potentially deadly or gravely injurious conduct does not act unreasonably by instinctively and passionately striking out at the source of such provoking conduct. In our view, when the evidence so warrants, a trial court does not abuse its discretion by instructing the jury as to the elements of that defense, when requested, in a case involving the charge of heat of passion manslaughter. *See Henwood v. People*, 54 Colo. at 195–96, 129 P. at 1013–14. We therefore disavow the contrary views contained in the Court of Appeals opinion.

## IV

For the reasons stated above, the judgment of the Court of Appeals is affirmed.

---

**5.** It is also noteworthy that in *Fink* we quoted from the notes accompanying the then current version of the Colorado Jury Instructions (Criminal), which notes provided in pertinent part as follows:

The affirmative defense clause is deleted based upon the reasoning that if justification or exemption were present, the defendant would not be acting recklessly, therefore, if the jury is able to find that the defendant acted recklessly, they have already precluded any finding of affirmative defense. CJI–Crim. 9:7 (superseded). The current edition of Colorado Jury Instructions (Criminal) does not contain the above-quoted language. CJI–Crim. 9:7 (1983).