23CA1207 Peo v Worthy 09-11-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1207
Arapahoe County District Court No. 21CR2715
Honorable Michelle Jones, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Anthony Ray Worthy,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE LIPINSKY
Pawar and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 11, 2025

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Katherine Brien, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Anthony Ray Worthy appeals his convictions on one count of first degree murder - after deliberation (the murder count), one count of first degree assault, two counts of possession of a weapon by a previous offender, one count of possession of an illegal weapon, and one count of possession of a controlled substance.  We affirm.

## I.     Background

¶ 2     A jury could have reasonably found the following facts from the evidence introduced at trial.

¶ 3     Stephen Cullinane was on the phone with Wayne Dowst when Dowst suddenly said, "I think I got shot."  Cullinane told Dowst to "hang up with [him] and call [911]."

¶ 4     Dowst told the 911 operator that he had been shot in the stomach while sitting in a parking lot.  He reported that he was bleeding from his arm and having difficulty breathing.  When the operator asked Dowst if he knew who had shot him, Dowst responded that he did not know and said the unknown shooter had "pulled up" on him in a gray SUV.

¶ 5     Dowst informed the responding police officers that the shooter appeared suddenly and shot him "two or three times" from an old silver or gray SUV, that he did not know who shot him or why

1

someone would shoot him, and that he had "a bullet in his hand." Police recovered a bullet from the scene.

¶ 6    Dowst was taken to a hospital, where he died five days later. A coroner concluded that Dowst died from "complications of a perforating gunshot wound of the abdomen" and opined that Dowst's "manner of death," meaning "the circumstances as to how [the] cause [of death] came about," was homicide.

¶ 7    Police officers obtained a surveillance video from a building near the shooting location that depicts a silver or gray SUV driving erratically in the parking lot and adjoining alley near Dowst shortly before the shooting. The SUV drove up and down the alley; paused near Dowst; exited the alley; returned and quickly exited the alley a second time; traveled into the parking lot, close to where Dowst was sitting; drove backward; and then moved forward again. The video then shows the SUV stopping at the shooting location for about two minutes and rapidly driving away.

¶ 8    Police later located the SUV and found Worthy sleeping inside it. During an interview with police officers, Worthy said, among other things, that

- he was living in the SUV;

2

- on the day of the shooting, he drove to his bank, which was in the same area as the shooting location;

- nobody else drove the SUV;

- he did not know anything about the shooting;

- he did not shoot Dowst;

- he recognized the SUV in an image taken from the surveillance video;

- he did not have a gun in the SUV; and

- he occasionally used drugs.

¶ 9 After the interview, police obtained a search warrant for the SUV and found a gun, drug paraphernalia, and suspected narcotics in it. A firearms examiner determined that the gun found in the SUV had fired the bullet that the officer recovered at the scene.

¶ 10 As noted above, the jury convicted Worthy on six counts.

¶ 11 On appeal, Worthy contends that the court abused its discretion by giving the jury an erroneous response to its question regarding the elements of the murder count to which the term "after deliberation" applies (the question) and by denying defense counsel's motion for a new trial (the motion) premised on that response. Additionally, Worthy asserts that the court's jury

3

instruction on reasonable doubt (the court's instruction) violated his constitutional rights and that the court erred by denying defense counsel's proposed supplemental reasonable doubt instruction (the proposed supplemental instruction).

## II. Analysis

### A. The Court Abused Its Discretion by Providing an Erroneous Response to the Question

¶ 12    Worthy contends that the trial court's erroneous response to the question and rejection of the defense's proposed response constituted an abuse of discretion.  He argues that the court's response "merely reminded the jury [that] it was to determine whether the prosecution had proven the elements [of the murder count] and referred the jury back to the original instruction defining 'after deliberation,'" even though the jury was asking whether the "after deliberation" element applies to the fifth and sixth elements of the murder count.  We agree that the court abused its discretion by giving its response.

### 1. Standard of Review

¶ 13    "We review de novo whether a particular jury instruction correctly states the law." *People v. Nerud*, 2015 COA 27, ¶ 35, 360

P.3d 201, 207. However, we review the court's "response to a jury question for an abuse of discretion." *People v. Cox*, 2023 COA 1, ¶ 16, 528 P.3d 204, 210. "A court abuses its discretion where its decision is manifestly arbitrary, unreasonable, or unfair, or it applies an incorrect legal standard." *People v. Rodriguez*, 2022 COA 98, ¶ 12, 521 P.3d 678, 681. In assessing whether a court's "decision is manifestly unreasonable, arbitrary, or unfair, we ask not whether we would have reached a different result" but whether the court's "decision fell within the range of reasonable options." *People v. Archer*, 2022 COA 71, ¶ 23, 518 P.3d 1143, 1149-50 (quoting *Hall v. Moreno*, 2012 CO 14, ¶ 54, 270 P.3d 961, 973).

¶ 14  The parties agree that Worthy preserved his argument regarding the court's response to the question. "We review noncimstitutional trial errors that were preserved by objection for harmless error." *Castillo v. People*, 2018 CO 62, ¶ 56, 421 P.3d 1141, 1150; *see People v. Snelling*, 2022 COA 116M, ¶ 15, 523 P.3d 477, 482-83. "Under this standard, reversal is required only if the error affects the substantial rights of the parties." *Hagos v. People*, 2012 CO 63, ¶ 12, 288 P.3d 116, 119; *see Snelling*, ¶ 15, 523 P.3d at 483.

¶ 15    Worthy further argues that the court's response to the question deprived him of his constitutional rights to due process, conviction by proof beyond a reasonable doubt, trial by jury, and a fair trial.  To the extent that the response implicated Worthy's constitutional rights, we review for constitutional harmless error if we determine that the court erred.  *See Hagos*, ¶ 11, 288 P.3d at 119.  Under this standard of review, an error "require[s] reversal unless the reviewing court is 'able to declare a belief that [the error] was harmless beyond a reasonable doubt.'"  *Id.* (second alteration in original) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

## 2.    Additional Facts

¶ 16    Jury instruction twelve, in relevant part, defined "after deliberation" and "'intentionally' or 'with intent'" as follows:

> The term "after deliberation" means not only intentionally, but also that the decision to commit *the act* has been made after the exercise of reflection and judgment concerning the act.  *An act* committed after deliberation is never one which has been committed in a hasty or impulsive manner.

> A person acts "intentionally" or "with intent" when his conscious objective is to cause the specific result proscribed by the statute defining the offense.  It is immaterial whether or not the result actually occurred.

6

(Emphases added.)

¶ 17     Jury instruction fourteen set out the elements of the murder

count:

> 1.    That the defendant,
>
> 2.    in the State of Colorado, at or about the date and place charged,
>
> 3.    after deliberation, and
>
> 4.    with the intent,
>
> 5.    to cause the death of a person other than himself,
>
> 6.    caused the death of that person or of another person.

¶ 18     The jury asked the question during its deliberations.  It

concerned the definition of "after deliberation" in instruction twelve

and element 3 in instruction fourteen: "[D]oes the 'deliberation'

relate to the '[a]ct' or relate to elements 5 [and] 6 'cause of death'"?

¶ 19     The court and the lawyers discussed at length how the court

should respond to the question.  Defense counsel argued that,

because "the mental states of intent and deliberation apply to the

rest of the elements" for the murder count, the court "should

answer that after deliberation and intent apply to whatever the

elements are following [them]," meaning elements five and six.  The

prosecutor asserted that the court should answer the question by referring the jury back to instruction number twelve and its "definition of after deliberation."  The prosecutor argued that instruction twelve was sufficient to answer the question because the definition of "after deliberation" said that the term "applies to the act."

¶ 20    Defense counsel responded that

> the mens rea, which would include both intent
> and after deliberation, applies to all of the
> elements including the actus reus itself.  So
> the reflection and judgment ha[ve] to be on the
> killing as well as on the act that is the cause.
> So I think it's important that the jury
> understand that.

Defense counsel and the prosecutor continued to dispute whether, as the defense argued, the court needed to inform the jury that "the reflection and the judgment ha[ve] to be on the killing as well as on the act that is the cause" or, as the prosecutor asserted, the court merely needed to clarify the meaning of "after deliberation."

¶ 21    The trial court agreed with the prosecutor and concluded as follows:

> So I do believe the instructions they have are
> sufficient, but I am going to just direct them
> that they're to consider whether the

prosecution has proven each of the elements of [the murder count] beyond a reasonable doubt and that the state of mind in element three after deliberation is defined in instruction number [twelve].

. . . .

[Jury instruction twelve] will tell them . . . [that] [a]fter deliberation means not only intentionally but after the exercise of reflection and judgment, and the intentionally part directs them to the conscious objective to cause the result proscribed by the statute.

I believe that [response] gives [the jury] sufficient information to proceed with deliberations and answers the question appropriately without any further confusion to the jury.

¶ 22    After the court ruled, defense counsel "persist[ed] in [her] request to clarify for the jurors" that the "after deliberation" element of the murder count applied to elements five and six — "to cause the death of a person other than himself" and "caused the death of that person or of another person."  The court disagreed, saying that, because instruction twelve told the jury "after deliberation means . . . intentionally" and "intentionally" means that the "objective has to . . . cause a specific result proscribed by the statute," referring the jury back to instruction twelve was "sufficient" to answer the question and would not result in "further [jury] confusion."

9

¶ 23    Accordingly, the court answered the question as follows: "The jury is to determine whether the prosecution has prove[d] each of the elements of count 1 beyond a reasonable doubt.  The state of mind in element 3 "after deliberation" is defined in instruction #12."

### 3.    The Court Abused Its Discretion by Referring the Jury Back to Instruction Twelve

¶ 24    Worthy contends that the court abused its discretion because its response "provided no clear answer" to the question and its reference to jury instruction twelve "served no useful purpose."  We agree.  (Notably, Worthy does not contend that the court erred by giving the twelfth and fourteenth jury instructions.  His first argument is limited to the court's answer to the question.)

¶ 25    When a jury asks a question during deliberations, an additional instruction is "often appropriate" unless

> (1) the jurors can be adequately informed by directing their attention to some portion of the original instructions; (2) the request concerns matters not in evidence or does not pertain to the law of the case; or (3) the request would call upon the judge to express an opinion upon factual matters that the jury should determine.

*People v. Frye*, 2014 COA 141, ¶ 26, 356 P.3d 1000, 1005 (quoting *Copeland v. People*, 2 P.3d 1283, 1288 (Colo. 2000)).

¶ 26    "*Absent a contrary showing*, it is presumed that the jury understood and heeded the trial court's instructions." *Leonardo v. People*, 728 P.2d 1252, 1255 (Colo. 1986) (quoting *People v. Moody*, 676 P.2d 691, 697 (Colo. 1984)).  However, where "a jury affirmatively indicates that it has a fundamental misunderstanding of an instruction it has been given, the basis for a presumption that the jury understands the [original jury] instruction disappears." *Id.* Thus, if the jury "indicates to the judge that it does not understand an element of the offense charged or some other matter of law central to the guilt or innocence of the accused," the court "has an obligation to clarify that matter for the jury in a concrete and unambiguous manner." *Id.* at 1256.

¶ 27    We next turn to whether, as Worthy argues, the question reflected the jury's confusion as to whether the "after deliberation" element of the murder count applied to the fifth and sixth elements of the count.

¶ 28    "A person commits the crime of murder in the first degree if . . . [a]fter deliberation and with the intent to cause the death of a person other than himself, he causes the death of that person or of another person . . . ." § 18-3-102(1)(a), C.R.S. 2025.  "'[A]fter

11

deliberation' is part of the culpable mental state of first degree murder." *People v. Harlan*, 8 P.3d 448, 474 (Colo. 2000), *overruled on other grounds by, People v. Miller*, 113 P.3d 743 (Colo. 2005). "What is required for the element of deliberation is that the decision to kill be made after the exercise of reflection and judgment concerning the act." *People v. Bartowsheski*, 661 P.2d 235, 242 (Colo. 1983). Thus, "deliberation requires that a design to kill precede the killing." *Id.*

¶ 29   In the question, the jury asked whether, to convict Worthy of the murder count, it only needed to find that Worthy decided to commit "the act" — presumably firing the gun — after deliberation or whether it needed to find that, "after deliberation," he decided to shoot the gun *and* "after deliberation" intended to cause Dowst's death and in fact caused Dowst's death.

¶ 30   The question did not indicate that the "jury ha[d] overlooked some portion of the [original jury] instructions." *Leonardo*, 728 P.2d at 1255. Rather, it showed that the jury was unsure whether "the decision to commit *the act*" language in the definitional instruction for "after deliberation" referred to the decision to *cause the victim's death.* (Emphasis added.) In other words, the question indicates

12

that the jury could have believed that "the act" was something other than "caus[ing] the victim's death." The question therefore reflected the jury's "fundamental misunderstanding" of the instruction. *Id.*

¶ 31 Given the jury's confusion reflected in the question, the court was required to answer the question "in a concrete and unambiguous manner." *Id.* at 1256; *cf. People v. Alexis*, 806 P.2d 929, 931-32 (Colo. 1991) (holding that the trial court properly referred the jury back to the original jury instructions because "the question from the jury did not relate to the law of the case, but to the extent and meaning of the evidence"); *People v. Phillips*, 91 P.3d 476, 484 (Colo. App. 2004) (concluding that, because the "jury [question] merely sought guidance regarding which facts it should consider in determining whether defendant's belief was reasonable" when acting in self-defense, the trial court did not err by referring the jury back to an original instruction).

¶ 32 For this reason, the court's answer directing the jury to reread instruction twelve and saying that the jury had to "determine whether the prosecution ha[d] prove[d] each of the elements of [the murder count] beyond a reasonable doubt" could not provide the clarification the jury sought.

¶ 33    Accordingly, we hold that the court abused its discretion when it answered the question.

### 4. The Court's Error in Answering the Question Was Harmless Beyond a Reasonable Doubt

¶ 34    Worthy contends that the trial court's error in responding to the question was not harmless beyond a reasonable doubt. *See Hagos*, ¶ 11, 288 P.3d at 119. We disagree.

¶ 35    As explained in Part II.A.3 above, the court's response to the question did not resolve the jury's confusion regarding whether, to convict Worthy of the murder count, it only needed to find that he decided to fire the gun "after deliberation," or whether it also had to find that he deliberated about causing Dowst's death.

¶ 36    But our analysis does not stop with our determination that the court's answer to the question was inadequate. We must next determine whether, as a consequence of the flaw in the court's answer, there is a "reasonable possibility" that the jury convicted Worthy even though it did not find that the prosecution proved every element of the murder count beyond a reasonable doubt. *Leonardo*, 728 P.2d at 1257 ("If there is a reasonable possibility that the defendant could have been prejudiced, the error cannot be

14

harmless beyond a reasonable doubt.").  A "reasonable possibility" means "a degree of likelihood and implies a realistic possibility." *People v. Wadle*, 97 P.3d 932, 937 (Colo. 2004).

¶ 37     Under Worthy's reasoning, the court's error could have led the jury to convict him after finding that he deliberated before committing the "act" — firing the gun — but that he did not deliberate about killing Dowst.  As noted above, because the jury did not express any confusion about element 4 — "with the intent" — in instruction fourteen, we must presume it understood such element and applied it correctly.  *See Leonardo*, 728 P.2d at 1255.

¶ 38     Thus, to convict Worthy without finding that the prosecution had proved all the elements of the murder count beyond a reasonable doubt, the jury would have needed to conclude that (1) Worthy fired the gun "after deliberation" and (2) he intended to cause Dowst's death, but (3) Worthy did not deliberate before carrying out his intention to kill Dowst.  Put differently, under Worthy's scenario, the jury could have concluded that Worthy drove toward Dowst, backed away, drove toward him again, and fired the gun after "the exercise of reflection and judgment," but only decided to kill Dowst at the last second and not after "the exercise of

15

reflection and judgment concerning the act." *Bartowsheski,* 661 P.2d at 242.

¶ 39    There is no "degree of likelihood" or "realistic possibility" that the verdict was the product of such an implausible scenario, however.  *Wadle,* 97 P.3d at 937.  Given the evidence before the jury, it makes little sense that the jury could have concluded that Worthy reflected on firing the gun but did not reflect on killing Dowst, even though he intended to take Dowst's life when he pulled the trigger.  (We note that the defense did not argue this far-fetched scenario at trial.  Rather, defense counsel asserted that the prosecution had not proved that Worthy acted with both "intent" *and* "after deliberation.")

¶ 40    For these reasons, we hold there is no reasonable possibility that the jury convicted Worthy without finding that he deliberated about causing Dowst's death.  More generally, there is also no reasonable possibility that the jury convicted Worthy of the murder count without finding that the prosecution had proved all the elements of the murder count beyond a reasonable doubt.  Under the circumstances, we are "able to declare a belief that [the court's error] was harmless beyond a reasonable doubt." *Hagos,* ¶ 11, 288

16

P.3d at 119 (quoting *Chapman*, 386 U.S. at 24). Thus, the court's error in answering the question did not violate Worthy's protection under the Due Process Clause of the United States Constitution "against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Tibbels v. People*, 2022 CO 1, ¶ 23, 501 P.3d 792, 797 (quoting *In re Winship,* 397 U.S. 358, 364 (1970)).

¶ 41    In sum, we affirm Worthy's conviction for the murder count because the court's error was harmless under the constitutional error standard. *See Griego v. People*, 19 P.3d 1, 8-10 (Colo. 2001) (holding that the court's instructional error was harmless beyond a reasonable doubt because "[i]t would strain credulity for [the court] to conclude that the jury's finding on the issue of notice [was] attributable to [its finding] that the defendant acted with 'an awareness or understanding' [that his driver's license had been revoked] rather than finding that he 'was aware'" of the revocation); *cf. Leonardo,* 728 P.2d at 1258 (reversing based on an erroneous answer to a jury question because the defendant "might well have been convicted of theft by receiving for no more than 'having a suspicion' that the tools he bought were stolen" and, therefore, "[i]t

[was] impossible to determine whether" the court's error "was harmless beyond a reasonable doubt"); *People v. Ridgeway*, 2013 COA 17, ¶¶ 20, 34, 307 P.3d 126, 129, 131 (concluding that the court's instructional error was not harmless beyond a reasonable doubt because there was a reasonable possibility that the jury convicted the defendant for possession of burglary tools without finding that he intended to use the tools in a burglary).

### B. The Court Did Not Abuse Its Discretion by Denying the Motion

¶ 42    Worthy contends that, for the same reason the court erred in answering the question, it also erred by denying the motion. We disagree.

### 1. Standard of Review

¶ 43    "The decision of a trial court to grant or deny a new trial is a matter entrusted to the court's discretion and will not be disturbed on review absent an abuse of that discretion." *Wadle*, 97 P.3d at 936.

### 2. Additional Facts

¶ 44    After the trial, Worthy moved for a new trial under Crim. P. 33 based, in part, on the court's answer to the question. (Because

Worthy does not reassert on appeal the other argument he presented in the motion, we do not address it.)

¶ 45     In the motion, Worthy argued that, after the jury returned its verdict, defense counsel and the prosecutor spoke with two jurors outside the courtroom.  The jurors allegedly said that "the [c]ourt's response to the . . . question did not provide clarification," and that the jurors determined that "the element of deliberation d[id] not apply to [elements] 5 and 6" in jury instruction fourteen.  Defense counsel supported the motion with an investigator's affidavit that recounted the conversation with the jurors.

¶ 46     The prosecution responded that, under CRE 606(b), the court must disregard defense counsel's assertions concerning the jury's deliberations and the investigator's affidavit.

¶ 47     The court denied the motion and reiterated that it had properly responded to the question.

### 3.     The Court Properly Denied the Motion

¶ 48     Worthy contends that the trial court abused its discretion by denying the motion.  We disagree.

¶ 49     "The purpose of a Crim. P. 33 motion is to allow the trial court an opportunity to correct its errors." *People v. Lopez*, 2015 COA 45,

¶ 62, 399 P.3d 129, 138; *see Losavio v. Dist. Ct.*, 512 P.2d 264, 266 (Colo. 1973).  "Motions for a new trial based on newly discovered evidence are looked on with great disfavor, and we will not overturn denials of such motions absent clear abuse of discretion."  *People v. Hopper*, 284 P.3d 87, 92 (Colo. App. 2011).

¶ 50    The "no-impeachment rule" is codified in CRE 606(b).  *People v. Archuleta*, 2021 COA 49, ¶ 15, 491 P.3d 1172, 1174.  CRE 606(b) says, in relevant part, that,

> [u]pon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

*See People v. Newman*, 2020 COA 108, ¶ 11, 471 P.3d 1243, 1250. (Worthy does not argue that one of the three exceptions to CRE 606(b) applies.)

¶ 51    Under the no-impeachment rule, a court "strongly disfavors any juror testimony impeaching a verdict, even on grounds such as mistake, misunderstanding of the law or facts, failure to follow instructions, lack of unanimity, or application of the wrong legal

20

standard." *People v. Harlan*, 109 P.3d 616, 624 (Colo. 2005). The rule has "three fundamental purposes: to promote finality of verdicts, shield verdicts from impeachment, and protect jurors from harassment and coercion." *Stewart v. Rice*, 47 P.3d 316, 322 (Colo. 2002); *see Harlan*, 109 P.3d at 624. Further, it "protects the jurors in performing their public service and their post-verdict privacy," "acts to restrain disappointed litigants," and "presumes that jurors have followed the court's instructions and have discharged their duties faithfully." *Stewart*, 47 P.3d at 322.

¶ 52    We agree with the People that, under CRE 606(b), the court could not set aside the verdict based on the jurors' statements or the investigator's affidavit. *See Archuleta*, ¶ 15, 491 P.3d at 1174 ("Courts have long been hesitant to peek behind a jury verdict by inquiring into a jury's deliberations or its thought processes in reaching the verdict."). The motion necessarily failed without these supporting allegations. (Although the court did not deny the motion under CRE 606(b), we "may affirm a lower court's decision on any ground supported by the record, whether relied upon or even considered by the trial court." *People v. Dyer*, 2019 COA 161, ¶ 39, 457 P.3d 783, 792.)

21

¶ 53    Thus, we hold that the court did not abuse its discretion by denying the motion.

### C. The Trial Court's Use of the 2022 Model Jury Instruction on Reasonable Doubt Did Not Violate Worthy's Constitutional Rights

¶ 54    Worthy contends that the court's instruction unconstitutionally lowered and shifted the burden of proof and undermined the presumption of innocence, and that the court further erred by rejecting the proposed supplemental instruction. We disagree.

### 1. Standard of Review

¶ 55    "We review de novo whether the jury instructions adequately informed the jury of the governing law." *People v. Salazar*, 2023 COA 102, ¶ 9, 542 P.3d 1209, 1213. "The district court has substantial discretion in formulating the jury instructions, so long as they are correct statements of the law and fairly and adequately cover the issues presented." *Nerud*, ¶ 35, 360 P.3d at 207 (quoting *People v. Gallegos*, 226 P.3d 1112, 1115 (Colo. App. 2009)). "An instruction that lowers the prosecution's burden of proof below reasonable doubt constitutes structural error and requires

automatic reversal." *Johnson v. People*, 2019 CO 17, ¶ 8, 436 P.3d 529, 531.

2.    Additional Facts

¶ 56    The court's instruction was patterned on the 2022 model jury instructions regarding the presumption of innocence, the burden of proof, and reasonable doubt (the 2022 model instruction). Defense counsel objected because the 2022 model instruction was allegedly "new and experimental." In place of the court's instruction, defense counsel asked the court to provide the jury with the "trusted and relied-upon and thoroughly tested definition" of reasonable doubt found in the 2021 model instructions.

¶ 57    The court denied defense counsel's request because the 2022 model instruction "ha[d] been approved," was "appropriate," was "changed because of problems with the old instruction," and was "quite frankly . . . much better" than the previous version.

¶ 58    The court's instruction said:

> Every person charged with a crime is presumed innocent. This presumption of innocence remains with the defendant throughout the trial and should be given effect by you unless, after considering all the evidence, you are convinced that the defendant is guilty beyond a reasonable doubt.

The burden of proof in this case is upon the prosecution. The prosecution must prove to the satisfaction of the jury beyond a reasonable doubt the existence of each and every element necessary to constitute the crime charged. This burden requires more than proof that something is highly probable, but it does not require proof with absolute certainty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. If you are firmly convinced of the defendant's guilt, then the prosecution has proven the crime charged beyond a reasonable doubt. But if you think there is a real possibility that the defendant is not guilty, then the prosecution has failed to prove the crime charged beyond a reasonable doubt.

After considering all the evidence, if you decide the prosecution has proven each of the elements of a crime charged beyond a reasonable doubt, you should find the defendant guilty of that crime.

After considering all the evidence, if you decide the prosecution has failed to prove any one or more of the elements of a crime charged beyond a reasonable doubt, you should find the defendant not guilty of that crime.

*See* COLJI-Crim. E:03 (2022).

¶ 59      At the jury instruction conference, defense counsel tendered

the proposed supplemental instruction:

One reason for the high burden of proof of beyond a reasonable doubt in criminal cases,

is to protect people against the risk of wrongful conviction. Another is to promote public confidence in our justice system. Individuals going about their ordinary affairs should be confident that the state cannot convict them of a crime unless it proves their guilt with utmost certainty. Therefore, you must not convict [Worthy] unless, in your deliberations, you become fully satisfied or firmly convinced of his guilt beyond a reasonable doubt.

¶ 60 The prosecutor objected to the proposed supplemental instruction and argued that the court's instruction "already adequately instruct[ed] the jury" and that "calling more attention to [the court's instruction] and trying to insert words like 'utmost certainty' raise[d] [the prosecution's] burden functionally."

¶ 61 The court agreed with the prosecution and found that "giving additional instructions" on reasonable doubt would be "more confusing than helpful to the jury."

### 3. The Court Did Not Err by Providing the Court's Instruction

¶ 62 Worthy contends that the court's instruction unconstitutionally lowered and shifted the burden of proof and undermined the presumption of innocence because it failed to inform the jury that it could find a reasonable doubt based on the "lack of evidence" presented, incorrectly defined "reasonable doubt"

25

as a "real possibility" that Worthy was not guilty, and omitted language from the 2021 model jury instructions that Worthy argues must appear in a reasonable doubt instruction. We disagree.

¶ 63     A trial court must "properly instruct the jury on — and, as the fact finder, the jury must apply — the reasonable doubt standard." *Tibbels*, ¶ 25, 501 P.3d at 797. "While the standard's application is universally mandated, courts retain some flexibility in defining what constitutes a reasonable doubt." *Johnson*, ¶ 10, 436 P.3d at 532.

¶ 64     A division of this court recently held that the 2022 model instruction did not "unconstitutionally lower the prosecution's burden of proof, violate the presumption of innocence, or shift the burden of proof to the defendant." *People v. Schlehuber*, 2025 COA 50, ¶ 2, 572 P.3d 641, 646; *see People v. Melara*, 2025 COA 48, ¶ 32, 572 P.3d 619, 628 (rejecting the defendant's contention that the "trial court denied his due process rights or otherwise reversibly erred by failing to include the 'lack of evidence' language in its reasonable doubt instruction").

¶ 65     We disagree with Worthy's argument that the removal of "lack of evidence" from the 2022 model instruction lowered or shifted the

burden of proof or undermined the presumption of innocence. The *Schlehuber* division expressly held — and we agree — that a court does not err by not including "lack of evidence" in a reasonable doubt instruction. *Schlehuber,* ¶ 20, 572 P.3d at 648; *see Melara,* ¶ 24, 572 P.3d at 627 (concluding that a trial court should "inform the jury, as part of the reasonable doubt instruction, that it may consider the lack of evidence in the case" but holding that the "omission of the phrase did not impermissibly lower the prosecution's burden of proof").

¶ 66 In addition, as explained in *Schlehuber*, the language of the 2022 model instruction does not preclude the jury's consideration of the prosecution's lack of evidence. This concept was subsumed within the court's instruction, which informed the jury that "the prosecution bears the burden of proof" and that Worthy is "presumed innocent unless the prosecution meets its burden." *Schlehuber,* ¶ 22, 572 P.3d at 649. Moreover, the last paragraph of the court's instruction told the jury that it must consider "all the evidence" when determining whether the prosecution met its burden of proof: "After considering all the evidence, if you decide the prosecution has failed to prove any one

27

or more of the elements of a crime charged beyond a reasonable doubt, you should find the defendant not guilty of that crime." *See id.* The "fail[ure] to prove" language unambiguously instructed the jury that it could not convict Worthy unless the prosecution proved every element of the murder count beyond a reasonable doubt and that a material gap in the prosecution's proof required the jury to return a not guilty verdict.

¶ 67     Accordingly, the court's instruction clearly informed the jury that, "if the prosecution fails to present sufficient evidence of guilt, it will not have met its burden." *Id.* (citing *United States v. Petty*, 856 F.3d 1306, 1311 (10th Cir. 2017)); *see also Rault v. Louisiana*, 772 F.2d 117, 137 (5th Cir. 1985) ("These instructions necessarily conveyed the concept that a reasonable doubt would arise in the absence of evidence sufficient to show guilt beyond a reasonable doubt.").

¶ 68     Because "there is no reasonable likelihood [that] the jury understood" the court's instruction as "unconstitutionally lower[ing] the prosecution's burden of proof below the reasonable doubt standard," the court did not err by not referring to "lack of evidence" in the court's instruction. *Schlehuber*, ¶ 25, 572 P.3d at 649; *see*

*Melara*, ¶ 32, 572 P.3d at 628. (The reappearance of "lack of evidence" in the 2023 model reasonable doubt jury instruction does not mean that the omission of such language from the 2022 model instruction "unconstitutionally lower[ed] the prosecution's burden of proof below the reasonable doubt standard." *Schlehuber*, ¶¶ 18 n.2, 25, 572 P.3d at 648 n.2, 649. Indeed, there is no "legal deficiency in an instruction" without the "lack of evidence" language. *Id.* at ¶ 20, 572 P.3d at 648.)

¶ 69    Worthy also contends that the reference in the court's instruction to a "real possibility" that the defendant was not guilty lowered and shifted the burden of proof and undermined the presumption of innocence. We disagree. *See id.* at ¶ 34, 572 P.3d at 651.

¶ 70    The court's instruction said that "reasonable doubt" is a "real possibility that [Worthy] is not guilty" and that it "requires more than proof that something is highly probable." This definition of reasonable doubt "has been consistently approved by federal courts as an accurate expression of the reasonable doubt standard." *Id.* at ¶ 30, 572 P.3d at 650; *see, e.g., Victor v. Nebraska*, 511 U.S. 1, 24-27 (1994) (Ginsburg, J., concurring in part and concurring in the

judgment) (concluding that a similar definition of reasonable doubt "surpasse[d] others . . . in stating the reasonable doubt standard succinctly and comprehensibly").

¶ 71    Indeed, the "phrase 'real possibility' correctly directs the jury not to acquit the defendant simply because it can conceive of *some* fanciful possibility that the defendant is not guilty." *Schlehuber*, ¶ 31, 572 P.3d at 650. Thus, the "'real possibility' language simply explain[s] the threshold [that] the prosecution must overcome" to prove each element of the offense beyond a reasonable doubt. *Id.* at ¶ 34, 572 P.3d at 651.

¶ 72    In addition, the court's instruction correctly informed the jury that it had to presume Worthy's innocence, the burden of proof was "upon the prosecution," and the "prosecution must prove to the satisfaction of the jury beyond a reasonable doubt the existence of each and every element necessary to constitute the crime charged." And, as noted above, the instruction said that, "[a]fter considering all the evidence, if [the jury] decide[s] the prosecution has failed to prove any one or more of the elements of a crime charged beyond a reasonable doubt, [the jury] should find the defendant not guilty of that crime." Thus, "equating reasonable

doubt with a 'real possibility'" does not "shift the burden to the defendant to establish that real possibility." *Id.*

¶ 73    Finally, Worthy contends that the court lowered and shifted the burden of proof and undermined the presumption of innocence by omitting from the court's instruction the "hesitate to act" language that appeared in the 2021 model instructions. We disagree.

¶ 74    As the division explained in *Schlehuber*, although courts have upheld jury instructions that defined reasonable doubt as a doubt that would cause a reasonable person to "hesitate to act," jurists such as the late Justice Ginsburg criticized that formulation of reasonable doubt. *Id.* at ¶ 27, 572 P.3d at 649 (citing *Victor*, 511 U.S. at 24-25 (Ginsburg, J., concurring in part and concurring in the judgment)).

¶ 75    Like the *Schlehuber* division, "we do not see why" it would be error not to include "hesitate to act" in a reasonable doubt instruction, "so long as the instruction otherwise correctly defines the reasonable doubt standard." *Id.* at ¶ 28, 572 P.3d at 650. "[J]ust because a proposed instruction is a correct statement of the law does not mean the instruction must be given or that it is

the *only* correct way to articulate the applicable law." *Id.* Accordingly, the court did not err by omitting "hesitate to act" from the court's instruction.

¶ 76 For these reasons, we hold that the court's instruction did not lower or shift the burden of proof or undermine Worthy's presumption of innocence.

¶ 77 We also conclude that the court properly rejected the proposed supplemental instruction. The proposed supplemental instruction said the prosecution bore the burden of proving Worthy's guilt "with utmost certainty." Such language does not accurately reflect the applicable burden of proof. Because the proposed supplemental instruction erroneously characterized the prosecution's burden of proof, the court did not err by rejecting it.

### III. Disposition

¶ 78 The judgment is affirmed.

JUDGE PAWAR and JUDGE LUM concur.